**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THOMAS LOBBE, EDWIN VEGA, ANTHONY COLON and RUBEN DEJESUS individually and on behalf of all others similarly situated, | Civil Action No. |
| Plaintiffs, | **CLASS AND COLLECTIVE ACTION COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF** |
| vs. | |
| CABLEVISION SYSTEMS NEW YORK CITY CORPORATION, CABLEVISION SYSTEMS CORPORATION and CSC HOLDINGS, LLC, | **JURY TRIAL DEMAND** |
| Defendants. | |

Plaintiffs, individually and on behalf of all others similarly situated, by their attorneys, The Law Office of Christopher Q. Davis, PLLC, allege, upon personal knowledge and upon information and belief as to other matters, as follows:

## NATURE OF ACTION

1.      This is a collective and class action brought by Lead and Putative Class Representative Plaintiffs Thomas Lobbe, Edwin Vega, Anthony Colon and Ruben Dejesus (together, the "Representative Plaintiffs" or "Lead Plaintiffs") and all putative plaintiffs (collectively, "Plaintiffs"), on their own behalf and on behalf of the proposed collective classes and classes identified below.  Plaintiffs and the Putative Class and Collective Class members were or are employed by Defendants Cablevision Systems New York City Corporation, Cablevision Systems Corporation, and CSC Holdings, LLC (together "Cablevision" or "Defendants") as non-exempt hourly Field Service Technicians and were denied minimum wage compensation, "gap time" compensation, and overtime premium compensation by requiring

Field Service Technicians to work "off-the-clock" during their unpaid half-hour meal breaks and failing to properly calculate their regular rate of pay.  Defendants also failed to provide Plaintiffs and the Putative Class with accurate wage statements in violation of New York Labor Law ("NYLL") §195(3).  The Putative Class and Collective Class of employees are similarly situated to the Plaintiffs under Federal Rule of Civil Procedure 23 and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) and have suffered the same violations pursuant to Defendants' common policies and practices.

2.     The Collective Class is made of all persons who are or have been employed by Defendants as Field Service Technicians assigned to Defendants' facilities located in Brooklyn and the Bronx at any time within the three years prior to this action's filing date through the date of the final disposition of this action (the "Collective Class Period") and who were subject to Defendants' policy of failing to pay minimum wage compensation for all hours worked and failing to pay overtime premiums for all hours worked over 40 in a given workweek.

3.     The Class is made up of all persons who are or have been employed by Defendants as Field Service Technicians assigned to Defendants' Facilities located in Brooklyn and the Bronx within the period of six years prior to the filing date of this Complaint (the "Class Period") and who were subject to Defendants' unlawful practice of failing to pay Plaintiffs minimum wage, gap time compensation, and overtime premiums for all hours worked over 40 in a given workweek, and Defendants' unlawful practice of failing to provide Plaintiffs with accurate wage statements reflecting all hours, including overtime hours ,worked.

4.     Plaintiffs seek relief for the Class pursuant to the applicable provisions of the NYLL and Collective Class under the FLSA, to remedy the Defendants' failure to pay all wages due, in addition to injunctive relief.

## PARTIES

5.      Individual and Representative Plaintiff Thomas Lobbe is a Cablevision Field Service Technician, presently and at all relevant times residing in Bronx, New York.  He began his employment with Defendants in 2004, in the Audit Department.  He has held the title of Field Services Technician since 2011.  Plaintiff Lobbe has been on medical disability leave since May 2015.

6.      Individual and Representative Plaintiff Edwin Vega is a Cablevision Field Service Technician, presently and at all relevant times residing in Bronx, New York.  He began his employment with Defendants in February 1999.

7.      Individual and Representative Plaintiff Anthony Colon is a Cablevision Lead Field Service Technician, presently and at all relevant times residing in Bronx, New York.  He began his employment with Defendants in 2002.

8.      Individual and Representative Plaintiff Ruben Dejesus is presently and at all relevant times residing in Bronx, New York.  He began his employment with Defendants in 2000, and held the title Field Service Representative until February 2, 2012.

9.      Defendants Cablevision Systems New York City Corporation, Cablevision Systems Corporation and CSC Holdings, LLC are Delaware corporations with principle places of business at 111 Stewart Avenue, Bethpage, New York.

10.     At all relevant times, the Cablevision Defendants have met the definition of Plaintiffs' "employer" under Section 3(d) of the FLSA, 29 U.S.C. § 203(d) and NYLL §190(3).

11.     Upon information and belief, Defendants maintain control, oversight, and direction over their operations and employment practices.

12.     The Defendants have operated together as a common enterprise in conducting business, including the business practices described in this Complaint.  The Defendants are interrelated companies that have common ownership, officers, managers, product, and corporate purpose.

13.     At all times hereinafter mentioned, Defendant employed employees, including Plaintiffs, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials have moved in or produced for commerce within the meaning of Section 3(b), (g), (i) and (j) of the FLSA, 29 U.S.C. § 203(b), (g), (i), (j), (r) &(s).

14.     Defendants' gross volume of business is not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii).

## JURISDICTION & VENUE

15.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  The Court also has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1332.

16.     In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 207 et seq.

17.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

18.     Venue is proper in the United States District Court, Southern District of New York pursuant to 28 U.S.C. § 1391, because the wage violations which give rise to Plaintiffs' claims occurred in this District.

19.     This Court has personal jurisdiction over Defendants because they reside in and routinely transact business in New York.

## WAGE AND HOUR COLLECTIVE CLASS
## AND CLASS ACTION FACTUAL ALLEGATIONS

20.     Cablevision is a telecommunications service provider with operations in the New York metropolitan area.

21.     Cablevision provides residential cable services to over 3 million subscribers residing in New York, New Jersey, Connecticut and parts of Pennsylvania.

22.     Cablevision utilizes both in-house and contractor technicians to provide in-home technical support for their cable subscribers, including installation and troubleshooting support. Cablevision's contractor technicians have been the subject of numerous prior wage and hour collective and class action lawsuits alleging similar violations as those alleged herein.[1]

23.     Defendants have facilities in the Bronx, New York and Brooklyn, New York, through which Cablevision provides customer service support to residential subscribers in the Bronx, Brooklyn and other locations in the New York Metropolitan area.  Cablevision also has facilities in Long Island, New York, Westchester County, New York, Connecticut and New Jersey.

24.     Cablevision collectively refers to these New York Metropolitan area facilities as the "footprint," which also includes other affiliated businesses that do not include cable facilities, for example Newsday, News 12 and Lightpath.  Cablevision employs over 17,000 employees at its various facilities throughout the footprint.

25.     There are three Cablevision support facilities, or depos, in Brooklyn: (i.) 45th Street and Avenue H (45th Street facility); (ii.) East 92nd Street and Avenue D (92nd Street facility); and (iii.) East 96th Street and Avenue D (96th Street facility), and one facility located in

---

[1] The Lead Plaintiffs are, and were at all times, employees of Defendants and not independent contractors.  The proposed and putative FLSA collective class and Rule 23 classes do not include Defendants' independent contractor workforce.

the Bronx, located on Brush Avenue (collectively referred to as the "Brooklyn and Bronx Facilities").

26.     Field Service Technicians assigned to the Bronx and Brooklyn facilities are required to abide by the terms and conditions of Cablevision's Employee Handbook, which is applicable to all employees throughout the footprint.

27.     The Brooklyn and Bronx Facilities service a significantly higher volume of customers than their counterparts in suburban New York, New Jersey and Connecticut.

28.     Barry Monopoli, Cablevision Regional Vice President of the New York City Market, oversees the business operations at the Brooklyn and Bronx Facilities.   Upon information and belief, Mr. Monopoli visits the Brooklyn and Bronx Facilities on a regular weekly basis.

29.     Richard Burns, Cablevision Director of Operations, reports directly to Mr. Monopoli, and shares operational responsibility over the Bronx and Brooklyn Facilities.   Upon information and belief, Mr. Burns supervises at least six managers, including four Field Service Managers at the Bronx Facility, who in turn oversee twelve to sixteen Field Service Supervisors.

30.     Burns and Monopoli oversee and enforce all operational polices and practices which relate to the services provided by Field Service Technicians in the Brooklyn and Bronx facilities.

31.     Upon information and belief, Defendants directly employ hundreds of in-house technicians, in the Brooklyn and Bronx Facilities, including Field Service Technicians, who provide installation and troubleshooting service to Cablevision customers.   Field Service Technicians are organized into teams of approximately ten to fifteen technicians, with each team reporting to its own Field Service Supervisor.  Each team is also assigned at least one Lead Field

Service Technician, who holds all the same job duties as Field Service Technicians, but may be assigned additional responsibilities including monitoring the other technicians on the team and assignment to more difficult jobs that subordinate technicians do not have the expertise to complete.

**Defendants' Unlawful "Off the Clock" Practice of Forcing Plaintiffs to Work During Unpaid Lunch Breaks**

32.    In order to provide Cablevision customers with adequate service, Defendants require non-exempt hourly Field Service Technicians to meet demanding productivity requirements each workday, forcing Plaintiffs to work in excess of 40 hours per week in order to avoid disciplinary action.  As a result, Plaintiffs regularly worked "off-the-clock" through their unpaid half-hour meal breaks.

33.    Field Service Technicians are assigned to weekly shifts that consist of 5 consecutive 8.5-hour days, or 42.5 hours a week, with a half-hour meal period automatically deducted from each daily shift.  According to the Cablevision Employee Handbook, Field Service Technicians may also perform overtime-eligible labor that is pre-approved and scheduled in advance by a supervisor or manager, and are paid at one and one-half their hourly rate of pay for this time.[2]

34.    According to the Cablevision Employee Handbook, "incidental overtime" (i.e. approved but unscheduled overtime-eligible labor) may be needed to "ensure a high degree of service to our customers and guests, to address business needs, breaking news or unplanned

---

[2]    Additionally, Field Service Technicians may be eligible for "standby" scheduling, whereby "employees are scheduled to be available to perform work outside their regular work schedule, as required by their supervisor/ manager to meet the Company's business needs." While on standby, employees receive a lump sum incentive pay of approximately $100 to $200, in addition to their hourly rate of pay for hours worked, or their overtime rate of pay for all standby hours worked over forty hours in a given work week.

events." Field Service Technicians are paid one and one-half their hourly rate of pay for this pre-approved overtime.

35.    According to the Cablevision Employee Handbook, supervisors must approve overtime labor in advance and "failure to obtain advance approval may result in corrective action, up to and including suspension or termination of employment." Further, according to the Handbook, "[i]t is Cablevision's policy that employees be paid for all overtime worked and [employees] must report all overtime hours worked, even if [they] did not receive advance approval."

36.    According to Cablevision's commonly enforceable policies and practice, working unapproved "incidental overtime" hours, while compensable, is prohibited.

37.    Pursuant to Cablevision's common policies, Field Service Technicians are required to report to their assigned facility before the start of their shift in order to receive their daily route assignment, which includes between 4 and 6 different jobs, each assigned a particular time slot. Plaintiffs must arrive at their assigned jobs during the designated time slot or they will be penalized for lateness.

38.    During the early years of the Class period, Field Service Technicians received their daily assignments on a printout "work order" provided by their supervisors. More recently, Plaintiffs were provided with electronic tablet devices, equipped with ETA Direct and Tech Mobility performance tracking software ("Cablevision Software"), through which Field Service Technicians receive their daily route assignments. Field Service Technicians are required to use the Cablevision Software to access their assigned jobs, daily schedule, and other information necessary to perform their jobs. Further, Field Service Technicians are required to indicate in Cablevision Software when they start and finish each job.

39.     According to Cablevision policy and practice, optimizing Field Service Technician's efficiency and customer service deliverables through regular performance monitoring, including monitoring data entered by the Field Service Technicians in the Cablevision Software, is a critical managerial responsibility. Notably, at particular times throughout the Class and Collective Action Time Periods, Cablevision has offered customers a promotional $20 discount when Field Service Technicians arrived late to the job.

40.     Consistent with Cablevision's policy of prioritizing timely arrivals of their Field Service Technicians, "lateness" is a critical component of Plaintiffs' performance evaluation. Field Service Technicians who arrive late to a certain predetermined number of customer appointments will receive a poor performance ranking, which adversely impacts a Field Service Technician's eligibility for promotions and hourly wage increases.  Plaintiffs report that Field Service Technicians work in constant fear that they will be disciplined for lateness.

41.     Plaintiffs also are under intense pressure to complete all assigned jobs within their 8.5-hour shift, so as to avoid "incidental overtime."  They speak with their supervisors by phone throughout the day and are pressured to avoid working after their scheduled shift ends.  They also receive regular reminders from supervisors and managers that incident overtime will only be approved in certain circumstances.  According to Cablevision's common performance evaluation system, Field Service Technicians are evaluated and potentially penalized for working incidental overtime in their annual performance review.

42.     As such, Field Service Technicians are required to strictly adhere to their assigned schedule.  Once the shift begins, they are allotted approximately twenty-five minutes to review their daily assignments, load the supplies they will need for the day onto their Cablevision vehicle, and depart from their facility to begin the drive to their first assignment.  Given the high

volume of Technicians in the depot completing these tasks during the beginning of each shift, together with the fact that Field Service Technicians were often required to attend team meetings with their supervisor before heading out into the field, Plaintiffs were typically unable to depart from the depot within the time allotted for doing so (25 minutes), meaning they often started their assigned route already behind schedule.

43.     Because the actual time required to properly complete a job is often longer than the time allotted in Field Service Technician's assigned schedule, and given delays associated with leaving the depot, traffic and other natural setbacks, Plaintiffs are typically behind schedule by early afternoon.

44.     In order to stay as close to schedule as possible, complete each assigned job within the allocated time frame, finish all assigned jobs within the 8.5 hour shift and avoid discipline for lateness, Plaintiffs are forced to work through their thirty-minute unpaid lunch break on an almost daily basis.  Rather than take the thirty-minute break, Plaintiffs often eat lunch on the go as they drive between jobs or skip lunch entirely.

45.     Meanwhile, Plaintiffs receive calls from Cablevision dispatchers and supervisors throughout the day, pressuring them to complete their jobs quickly and asking them when they will arrive at the next assigned job.  To that end, even when Plaintiffs would try to take their lunch breaks, they would often receive calls from their supervisors, requesting that Plaintiffs pick up extra jobs or pushing them to get to their next job as soon as possible.

46.     Supervisors and Cablevision dispatchers have access to Field Service Technicians' individual Cablevision Software platform and can monitor their productivity throughout the day by tracking their location, timeliness to each job, length of time to complete each job and determine which jobs may be likely to begin behind schedule.

47.     The Cablevision Software provides for a lunch break in each Technician's daily schedule and Plaintiffs are expected to electronically activate the lunch break, and indicate that they took the thirty-minute break.  However, given the intense demands to complete jobs in a tight schedule, Plaintiffs often activate the lunch and indicate in the comment field provided that they did not have the time to take lunch, or they would quickly activate and deactivate the lunch to "clear" the lunch from their schedule and continue to the next assigned job.

48.     While this software tracks Technicians' schedules on a daily basis, Plaintiffs are not paid based on their time logged in the platform.  Rather, according to Cablevision policy applicable to the entire class and collective class before and after Cablevision implemented this software, Defendants have tracked Field Service Technician's working time via paper time logs.

49.      At the end of every shift, Plaintiffs are required to manually record their start and end time, on a weekly time log sheet maintained by their supervisor.  Each time sheet has a row for each Field Service Technician assigned to the supervisor's team, as well as a column for each day of the week.  The time logs do not have a space for Plaintiffs to record when they started and stopped their lunch break or that they worked through a lunch break, nor did Defendants require Field Service Technicians to record this information.  Still, on days when they worked through their lunch, Plaintiffs would frequently write "no lunch" on the log sheet, indicating to their Supervisor that they had not taken lunch that day.

50.     Plaintiffs' supervisors were responsible for inputting each Field Service Technician's time into Cablevision's payroll system.  Throughout the entire Class and Collective Class Periods, the payroll system has automatically deducted a thirty-minute meal break from each day worked, regardless of whether the employee actually took the meal break.  To that end, on days when Plaintiffs worked through their lunch break with the awareness of supervisors or

managers, such as when they wrote "no lunch" on the time log sheets, or recorded "no lunch" through Cablevision Software, the automatic thirty-minute meal break was nonetheless deducted from their time and they were not paid for it.

51.     Defendants, pursuant to commonly enforced policies and practices, failed to provide Plaintiffs with any means or method, let alone any procedure, for recording actual hours worked during unpaid lunch breaks.   This conflicts with Cablevision's own mandate that employees must record all hours worked, and violates the NYLL and FLSA, which require employers to maintain accurate payroll records.   Indeed, even when Plaintiffs attempted to record a missed lunch on time sheets and Cablevision Software, or made verbal reports to their supervisors that they worked through lunch, they were not paid for this time worked despite the awareness of Cablevision's management, in violation of the FLSA and Defendants' own policy that "employees be paid for all overtime worked."

52.     As a result of Defendants failure to maintain accurate payroll records that reflect that actual amount of time that Plaintiffs worked, Defendants failed to furnish Plaintiffs and members of the Class with accurate and/or complete wage statements on each payday, that included the total hours worked each week and the full amount of wages earned during the pay period.

**Defendants Have Knowledge Of The Widespread "Off-The-Clock" Practices in the Brooklyn and Bronx Facilities**

53.     Defendants' knowledge of the pervasive and widespread nature of the off-the-clock violations alleged herein is well documented, and implicates all levels of management, from supervisors all the way up to the Director of Human Resources and James Dolan, the company's Chief Executive Officer, in willful violations of the labor laws.

54.     Plaintiffs frequently reported through Cablevision Software and time log sheets, both of which are monitored by Plaintiffs' supervisors, that they were forced to work through their unpaid lunch without compensation.  Additionally, the Representative Plaintiffs complained about working through lunch to their supervisors on numerous occasions throughout the Class and Collective Class Time Period.

55.     Meanwhile, Field Service Technicians' collective frustration with working through their unpaid lunch on an almost daily basis was well known by Cablevision management in the Brooklyn and Bronx Facilities.   Indeed, working though lunch was a common subject of team meetings attended by Field Service Technicians and their supervisors.

56.     For instance, as early as January 27, 2012, an email was sent by Michael Williams, Director of HFC Operations, to two other managers at the Bronx Facility with management responsibilities over the NYC footprint in Brooklyn and the Bronx, Director of Fiber Network Ponch Gordills, and Vice President of Infrastructure for the Greater New York Area Peter Odell, stating, "Field Operations Technicians were very vocal and complaining about salary increases, routes, not having enough time to complete their tasks, and *working through lunch*." (emphasis added).

57.     When supervisors failed to remedy Defendants' rampant off-the-clock practices, Plaintiff Lobbe escalated the issue to Cablevision's Human Resource Department, meeting with Human Resource personnel three times between June 2013 and April 2014 to complain about Field Service Technicians regularly working through lunch and obtain payment for this unpaid work.  His complaints fell on deaf ears, as the off-the-clock practices in the Brooklyn and Bronx Facilities continued with regularity.  Again, Defendants' actual practice violated its own policy,

which encourages employees who "have not been paid the proper amount of overtime that [they] have worked, [to] contact [their] supervisor/manager or Human Resources representative."

58.     Frustrated with Human Resource's failure to address Cablevision's illegal payroll practices, Plaintiff Lobbe emailed James Dolan, Chief Executive Officer and former owner of Cablevision, on or about April 8, 2014, informing him of Defendants' failure to compensate Plaintiffs for the off-the-clock work they performed during lunch.  Specifically, Plaintiff Lobbe wrote:

> am writing this email on my behalf in regards to unpaid wages stemming back to the year 2010 - to date.  For years Cablevision field service employees have been working through their 30 minute lunch break to accommodate Cablevision customers and the technicians daily work load.  Your employees have made management and Human Resources aware of these (unlawful) practices in town meetings.  I personally have had multiple meetings with Human Resources and management prior, during, and as of recent to the deployment, of ETA Direct.  Since June 29, 2013 I have had three meetings with current management and Human Resources.  I have exhausted all the appropriate channels provided by Cablevision.  I would appreciate your attention pertaining to this matter, for it has become critical.

59.     Plaintiff Lobbe did not receive a direct response from Mr. Dolan or Sandy Kapell, whom he cc'd on the email.  Instead, he received formal correspondence from Hector Reyes, Direct of Human Resources, dated April 30, 2014, which stated:

> It has recently come to Cablevision's attention that you claim that the Company's time records do not accurately reflect the hours you worked during certain weeks because you worked through your assigned lunch period and that you believe you are owed additional compensation for those hours.  Cablevision has looked into your claims, which included a review of your work orders dating back to 2010 and a review of data from the ETA Direct System.  The review substantiated that you noted that you worked through thirty lunch periods without corresponding payment.

60.     Notably, this correspondence alleges that Plaintiff Lobbe did not follow the proper process for recording time worked through lunch, however, Lobbe reported this problem to his supervisors over the course of several years without remedy.  Further, Cablevision's own HR Department's only means of cobbling together any record of Plaintiff's Lobbe's unpaid worked lunches was by making resort to unofficial records of his hours.  In fact, Lobbe was never informed of any proper method for recording hours worked through his lunch, and training modules for new time sheet software in use at the time *explicitly* required nonexempt employees to punch out and register a lunch periods, Plaintiffs, however, were never given access to this automated time keeping system.[3]  This clearly demonstrates that Defendants did not, in fact, have any process for recording time worked through lunch.

61.     Despite Cablevision's admissions that Plaintiffs frequently worked off-the-clock through their lunch breaks, going so far as to accept liability for Plaintiff Lobbe's lost overtime wages which were the result of working unpaid lunches on multiple occasions over the course of four years, a large volume of often-repeated verbal complaints from Field Service Technicians to supervisors and management throughout the Bronx and, upon information and belief, Brooklyn regarding the same unlawful practice, and voluminous written records documenting the fact that Field Service Technicians were working through lunches without pay, Defendants knowingly failed to correct their illegal over time policies, and off-the-clock violations continue to this day.

**Defendants' Unlawful Calculation of Plaintiffs' Regular Rate of Pay in Determining Overtime Premiums**

62.     Plaintiffs and all members of the Collective and Proposed Classes were eligible for and received annual bonuses paid by Defendants.

---

[3] According to the training module, non-exempt Cablevision employees were instructed "Note: In most cases the system will automatically deduct your scheduled lunch break.  If not, you **must** also enter your **In** and **Out** times for your lunch break."  [original emphasis].

63.    All Cablevision Field Service Technicians in the Brooklyn and Bronx Facilities were eligible for this bonus.

64.    The bonuses were computed based on a predetermined and nondiscretionary formula that was dependent on the success of the facility as a whole.

65.    The bonuses were thus awarded based on the success of the Defendant's employees as a group and not based on any particular Plaintiffs' personal productivity.

66.    The annual bonuses were awarded to employees to induce them to work more steadily, rapidly, and efficiently and are thus required to be included within the regular rate of pay under the FLSA and the NYLL.  Despite this, they were not included within the regular rate of pay for the purposes of calculating overtime wages at any point during the class and collective class periods.

## FLSA COLLECTIVE ACTION ALLEGATIONS

67.    Plaintiffs incorporate by reference all of the factual allegations made in the preceding paragraphs.

68.    Defendants employed Plaintiffs during the Collective Class Period.

69.    Defendants classified Plaintiffs and Members of the Collective Class as nonexempt for the purposes of the FLSA, paying them an hourly wage rather than an annual salary.

70.    Upon information and belief, there are approximately more than 400 current and former Field Service Technicians who are similarly situated to Plaintiffs and who were denied overtime compensation.

71.     The Lead Plaintiffs represent other Field Service Technicians, and are acting on behalf of Defendants' current and former Field Service Technicians' interests as well as their own interests in bringing this action.

72.     Defendants unlawfully required Plaintiffs and all individuals employed as Field Services Technicians to work through their unpaid half-hour meal breaks.

73.     At all times during the Collective Class Period, Defendants, as a matter of common policy and/or practice, have not paid Plaintiffs lawful overtime premiums for all hours worked in excess of 40 hours in a work week and/or minimum wage compensation for hours worked under 40 in a work week.

74.     Plaintiffs seek to proceed as a collective action, pursuant to 29 U.S.C. §216(b), on behalf of themselves and the following class of persons:

**Collective Class:**     All individuals employed by Defendants as Field Service Technicians, or similar titles, including Lead Field Service Technicians, in Defendants' Brooklyn, New York and Bronx, New York facilities at any point during the Collective Class Period who earned but were not paid lawful FLSA overtime premiums for hours worked over 40 in a work week and/or the applicable federal statutory minimum wage for hours worked under 40 in a workweek during the Collective Class Period based on the practices alleged herein.

75.     Specifically, Plaintiffs' Collective Class is further defined as involving (i) claims for unpaid overtime based on Defendants' company-wide policy of miscalculating the "regular rate of pay" for the purposes of determining overtime pay entitlement; and (ii) claims for unpaid overtime and minimum wage compensation for Defendants' practice of forcing Plaintiffs to work "off the clock" and without compensation during unpaid meal breaks.

76. As such, the Named Plaintiffs and the Collective Class suffered damages for unpaid earned overtime wages under the FLSA in each of the weeks they worked during the Collective Class Period.

77. Defendants were aware or should have been aware that the law required it to pay non-exempt employees, including Plaintiffs and the Collective Class, an overtime premium of 1 and ½ times their regular rate of pay for all work-hours Defendants suffered or permitted them to work in excess of 40 per workweek.

78. Defendants' conduct, as set forth in this Complaint, was willful and in bad faith, and has caused significant damages to Plaintiffs and the Collective Class.

79. Defendants are liable under the FLSA for failing to properly compensate Plaintiffs and the Collective Class, and as such, notice should be sent to the Collective Class.

80. There are numerous similarly situated current and former employees of Defendants who were subject to the aforementioned policies in violation of the FLSA who would benefit from the issuance of a Court supervised notice of the present lawsuit and the opportunity to join in the present lawsuit.

81. Those similarly situated employees are known to the Defendants and are readily identifiable through Defendants' records.

## FEDERAL RULE OF CIVIL PROCEDURE
## RULE 23 NEW YORK CLASS ALLEGATIONS

82. Plaintiffs incorporate by reference all of the factual allegations made in the preceding paragraphs.

83. Plaintiffs seek to proceed as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following defined classes:

**Proposed Class:** All individuals employed by Defendants as Field Service Technicians, or similar titles, including Lead Field Service Technicians, in Defendants' Brooklyn, New York and Bronx, New York facilities at any point during the Class Period who earned but were not paid lawful NYLL overtime premiums for hours worked over 40 in a work week and/or the New York minimum wage for hours worked under 40 in a workweek during the Collective Class Period based on the practices alleged herein.

84.     Specifically, Plaintiffs' Class is further defined as involving: (i) claims for unpaid overtime based on Defendants' company-wide policy of miscalculating the "regular rate of pay" for the purposes of determining overtime pay entitlement; (ii) claims for unpaid overtime and minimum wage compensation for Defendant Cablevision's practice of forcing Plaintiffs to work "off the clock" and without compensation during unpaid meal breaks; and (iii) claims for wage statement violations for Defendants' failure to provide Plaintiffs' with accurate wage statements on each payday that include the information required by NYLL §195(3), including the correct number of hours worked during the pay period.

85.     Defendants have violated NYCRR 142-2.2 and NYLL §§ 191, 193 by failing to pay Plaintiffs and the putative class at least one and one-half times the New York state minimum wage for all hours worked over 40 during the class period pursuant to the same illegal practices and policies alleged above.

86.     Numerosity:   The Proposed Class is so numerous that joinder of all members is impracticable.  Plaintiffs are informed and believe, and on that basis allege, that during the Class Period, Defendants employed over 400 people who satisfy the definition of the Proposed Class.

87.     Typicality:    Plaintiffs' claims are typical of those of the Proposed Class.  The Representative Plaintiffs are informed and believe that, like other Field Service Technicians,  the Class members were subjected to Defendants' policies, practices, programs, procedures,

protocols and plans alleged herein concerning the failure to pay proper wages, failure to keep adequate records and failure to furnish accurate wage statements.

88.    Superiority:    A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

89.    Adequacy:    The Representative Plaintiffs will fairly and adequately protect the interests of the Proposed Class, and have retained counsel experienced in complex FLSA and NYLL class and collective action litigation.

90.    Commonality: Common questions of law and fact exist to all members of the Proposed Class and predominate over any questions solely affecting individual members of the Proposed Class, including but not limited to:

    a.    Whether Defendants unlawfully failed to pay lawful overtime premiums for all hours worked over 40 in a workweek for those violations stated above;

    b.    Whether those violations were pursuant to a common policy or practice applicable to all class members;

    c.    Whether Defendants unlawfully failed to pay the state statutory minimum wage to members of the Proposed Class in violation of the NYLL;

    d.    Whether Defendants furnished class members with accurate wage statements on each payday containing the information required by NYLL § 195(3);

    e.    Whether Defendants kept and maintained records with respect to each hour worked by Plaintiffs and the Proposed Class;

    f.    Whether those violations were pursuant to a common policy or practice applicable to all class members;

g.      Whether Defendants employed Plaintiffs and the Proposed Class within the meaning of New York law;

h.      The proper measure of damages sustained by the Proposed Class; and

i.      Whether Defendants' actions were "willful."

91.     The case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecution of actions by or against individual members of the class would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendants. Further, adjudication of each individual member's claim as a separate action would be dispositive of the interest of other individuals not party to this action, impeding their ability to protect their interests.

92.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Proposed Class predominate over any questions affecting only individual members of the Proposed Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' common and uniform policies and practices denied the Proposed Class the wages to which they are entitled. The damages suffered by the individual Proposed Class members are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

93.     Plaintiffs intend to send notice to all members of the Proposed Class to the extent required by Rule 23. The names and addresses of the Proposed Class are available from Defendants.

94.     During the class period, and upon information and belief, Plaintiffs each worked more than 1 hour of gap time for which they were not paid the lawful minimum wage under either the NYLL or the FLSA and more than 1 hour of overtime-eligible work during the class and collective class periods for which they were not paid a lawful overtime premium of time and one half of their regular rate of pay.

### AS AND FOR A FIRST CAUSE OF ACTION
**(Unlawful Failure to Pay Overtime Compensation under the Fair Labor Standards Act)**

95.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

96.     Plaintiffs consent in writing to be a part of this action, pursuant to 20 U.S.C. § 216(b).  Plaintiffs written consent forms are attached hereto.  Plaintiffs anticipate that as this case proceeds, other individuals will sign consent forms and join as plaintiffs.

97.     At all relevant times, Defendants have been an "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 20 U.S.C. § 203.   At all relevant times, Defendants have employed and continue to employ employees, including Plaintiffs, and the Collective Class members.  At all relevant times, upon information and belief, Defendants have gross operating revenues in excess of $500,000.00.

98.     The FLSA requires each covered employer to compensate all non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours per work week.

99.     During their employment with Defendants, within the applicable statute of limitations, Plaintiffs and the other Collective Class members worked in excess of forty hours per workweek without lawful overtime compensation.

100.     Despite the hours worked by Plaintiffs and the Collective Class members, Defendants willfully, in bad faith, and in knowing violation of the Federal Fair Labor Standards Act, failed and refused to pay them overtime compensation.

101.     Plaintiffs were not paid FLSA mandated overtime premiums uniformly and based on the policies and practices articulated above.

102.     Also, by failing to accurately record, report, and/or preserve records of hours worked by Plaintiffs and the Collective Class, Defendants have failed to make, keep, and preserve records with respect to each of their employees sufficient to determine their wages, hours, and other conditions and practices of employment, in violation of the FLSA, 20 U.S.C. § 201, et seq.

103.     Defendants have failed to make a good faith effort to comply with the FLSA with respect to its compensation to Plaintiffs and the Collective Class.

104.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C §§ 216(b) and 255(a).

105.     Because Defendants' violations of the FLSA were willful, a 3-year statue of limitation applies, pursuant to 29 U.S.C. § 255.

106.     Plaintiffs, on behalf of themselves and the Collective Class, seek recovery of their attorneys' fees and costs to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

**<u>AS AND FOR A SECOND CAUSE OF ACTION</u>**
**(Unlawful Failure to Pay Minimum Wage Compensation under the Fair Labor Standards Act)**

107.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

108.    At all relevant times herein, Plaintiffs have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, et seq.

109.    The FLSA regulates, among other things, the payment of minimum wage by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce, per 29 U.S.C. §206(a); 29 U.S.C. § 207(a)(1).

110.    The Defendants are subject to the minimum wage requirements of the FLSA because they acted as an enterprise engaged in interstate commerce and its employees are engaged in commerce.

111.    Defendants, pursuant to their policy and practice, violated the FLSA by refusing and failing to pay Plaintiffs and other similarly situated employees a lawful minimum wage for all hours worked.

112.    Section 13 of the FLSA, codified at 29 U.S.C. § 213, exempts certain categories of employees from minimum wage obligations.   None of the FLSA exemptions apply to Plaintiffs or other similarly situated employees.

113.    Plaintiffs and all similarly situated employees are victims of a uniform and employer-based compensation policy.   Upon information and belief, this uniform policy, in violation of the FLSA, has been applied, and continues to be applied, to all Field Service Technicians in Defendants Brooklyn and Bronx Facilities.

114.    Defendants have acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Plaintiffs and other similarly situated employees, in addition to payment of back minimum wages, are entitled to recover an award of liquidated damages in an amount equal to the amount

of unpaid minimum wages described pursuant to Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b).  Alternatively, should the Court find Defendants did not act willfully in failing to pay minimum wage, Plaintiffs and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

115.    Plaintiffs, on behalf of themselves and the Collective Class, seek recovery of their attorneys' fees and costs to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

## AS AND FOR A THIRD CAUSE OF ACTION
### (Failure to Pay Lawful Overtime Premiums in Violation of NYCRR § 142.2.2 and Article 19 of the NYLL)

116.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

117.    At all relevant times, Plaintiffs were employees and the Defendants have been employers within the meaning of the New York Labor Law.

118.    The overtime wage provisions of Article 19 of the New York Labor Law and its supporting regulations apply to Defendants.

119.    Defendants have failed to pay Plaintiffs and the Rule 23 Class the overtime wages to which they were entitled under the New York Labor Law.

120.    By Defendants' failure to pay Plaintiffs and the Rule 23 Class Members premium overtime wages for hours worked in excess of 40 hours per week, they have willfully violated the New York Labor Law Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations, including but not limited to the regulations in 12 N.Y.C.R.R. Part 142.

121.    Also, Defendants have violated NYCRR 142-2.2 and NYLL §§ 191 and 193 by failing to pay Plaintiffs and the Rule 23 Class at least one and one-half times the minimum wage for all hours worked over 40 in any workweek during the class period.

122.    Due to Defendants' violations of the New York Labor Law, Plaintiffs and the Rule 23 Class Members are entitled to recover from Defendants their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

### AS AND FOR A FOURTH CAUSE OF ACTION
**(Failure to Pay Lawful Minimum Wages and "Gap Time" Wages in Violation of NYLL §§ 191, 193 and 652 and Article 19)**

123.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

124.    At all relevant times, Plaintiffs were employees and the Defendants have been employers within the meaning of the New York Labor Law.

125.    The minimum wage provisions of Article 19 of the New York Labor Law and its supporting regulations apply to Defendants.

126.    Defendants have failed to pay Plaintiffs and the Rule 23 Class the minimum wages to which they were entitled under the New York Labor Law.

127.    By Defendants' failure to pay Plaintiffs and the Rule 23 Class Members minimum wages, they have willfully violated the New York Labor Law Article 19, §§ 652 et seq., and the supporting New York State Department of Labor Regulations.

128.    Due to Defendants' violations of the New York Labor Law, Plaintiffs and the Rule 23 Class Members are entitled to recover from Defendants their unpaid minimum wages,

liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

129.    Similarly, Defendants have failed to pay Plaintiffs and the Rule 23 Class the difference between the New York State minimum wage and their hourly rate of pay as determined by Defendants for all hours worked in a workweek, a practice that is unlawful under the New York Labor Law.

130.    Specifically, Defendants failure to pay these – known as "gap time" wages under the relevant precedent - is prohibited by Section 193 of the New York Labor Law which expressly prohibits an employer from making unauthorized deductions from employees' wages.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Failure to Furnish Accurate Wage Statements in Violation of NYLL §195(3))

131.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

132.    At all relevant times, Plaintiffs were employees and the Defendants have been employers within the meaning of the New York Labor Law.

133.    The recording keeping provisions of Article 19 of the New York Labor Law and its supporting regulations apply to Defendants.

134.    Defendants did not provide Plaintiffs and members of the Rule 23 Class with a legally sufficient wage statement upon the payment of wages, as required by NYLL § 195(3).

1.    NYLL §195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria required under the NYLL.

2.    As a result of Defendants' unlawful conduct, Plaintiffs and members of the Class are entitled to an award of damages pursuant to NYLL § 198, in an amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by NYLL § 663.

## PRAYER FOR RELIEF

WHEREFORE, Lead Plaintiffs, on behalf of themselves and all members of the putative class and collective actions, prays for relief as follows:

A.      That the Court determine that this action may proceed as a class action under Rule 23(b)(1) and (3) of the Federal Rules of Civil Procedure;

B.      That Defendants are found to have violated the provisions of the New York Labor Law as to Plaintiffs and the Class;

C.      That Defendants are found to have violated the Federal Fair Labor Standards Act as to Plaintiffs and the Collective Class;

D.      That Defendants' violations as described above are found to be willful;

E.      An award to Plaintiffs and the Collective Class and Class Members for the amount of unpaid wages owed, including interest thereon, and penalties, including liquidated damages, subject to proof at trial;

F.      That Defendants further be enjoined to cease and desist from unlawful activities in violation of the FLSA and NYLL;

G.      That Plaintiffs' counsel and Plaintiffs Thomas Lobbe, Edwin Vega, Anthony Colon and Ruben Dejesus can adequately represent the interests of the class as class counsel and class representative, respectively.

H.      An award of reasonable attorneys' fees and costs pursuant to the NYLL and 29 U.S.C. § 216 and/or other applicable law; and

I.      For such other and further relief, in law or equity, as this Court may deem appropriate and just.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury

as to all issues so triable.

DATED:  March 22, 2016

                            THE LAW OFFICE OF CHRISTOPHER Q.
DAVIS, PLLC

_____

Christopher Q. Davis (CD-7282)
The Law Office of Christopher Q. Davis, PLLC
225 Broadway, Suite 1803
New York, New York 10007
646-430-7930