**THE LAW OFFICE of CHRISTOPHER Q. DAVIS**

**WORKING SOLUTIONS NYC**

December 7, 2016

**VIA ECF**

The Honorable Alvin K. Hellerstein
United States District Court
Southern District of New York
500 Pearl St., Room 1050
New York, NY 10007-1312

      Re:    *Lobbe et al v. Cablevision Systems New York City Corp., et al*;
               Case No.: 1:16-cv-02207-AKH

Dear Judge Hellerstein,

      Pursuant to Your Honor's Individual Rule 2.E concerning "disputes," this letter sets forth both Plaintiffs' and Defendants' positions regarding disputes concerning (1) the Court's August 5, 2016 Initial Conference Bench Order permitting discovery (See Filed and Entered Minutes for August 5, 2016 Initial Conference (the "August Order"), and (2) the Court's September 15 and 16, 2016 Orders granting in part Plaintiffs' Motion For Preliminary FLSA Collective Class Certification and directing Court-supervised notice to putative collective class members (the "September 15 Order" and "September 16 Order," and collectively with the August Order, the "Orders".)

      In addition to these disputes, Plaintiffs also seek leave to Amend the Complaint to add a necessary new party, add a Brooklyn class representative, and clarify the scope of the class. Defendants oppose these requests.

      This letter sets forth Plaintiffs' and Defendants' positions on these issues in turn. Plaintiffs' statements are in plain text; Defendants' are in italics.

**I.**      **Plaintiffs' Position Regarding the Court's Orders**

      For the last two months, Cablevision Systems New York City Corporations, Cablevision Systems Corporation, and CSC Holdings, LLC ("Defendants" or "Cablevision") has repeatedly violated the Orders on the issues set forth herein. Despite Plaintiffs' efforts to obtain compliance, communication with Defendants' counsel during the last two months has been limited, and within the last month, Defendants' late summer promises regarding "rolling production" of documents, coordination of depositions, and cooperation on discovery and notice matters have simply been abandoned. As set forth below, Plaintiffs' accordingly request that the Court address the following issues at the parties' December 8, 2016 conference:

      (1)      Cablevision has refused to provide the "open file" discovery, and produce witnesses for deposition, as required by the August Order. Rather than produce documents as directed – including documents related to Defendants' pertinent

policies and practices – Cablevision has improperly restricted its document discovery to a narrow set of documents that relate specifically to the Named Plaintiffs only. Similarly, Cablevision has not offered a single witness for deposition – which would in any event be impractical without first producing the required documents.

(2) Defendants' have improperly and surreptitiously communicated with class members, outside of the Court-ordered notice process, in a manner that has misled class members. Without informing the Court or Plaintiffs' counsel, Cablevision has been offering "Voluntary Separation Plans" to class members, which require class members to waive all claims against Cablevision as a condition of obtaining buy-out packages. Several class members have contacted Plaintiffs' counsel, indicating their (erroneous) belief that their participation in the "Voluntary Separation Plan" means they cannot also participate in the FLSA class – a clear indication that Cablevision's unilateral communications are impacting the notice and opt-in process. Upon learning of these very irregular efforts by Cablevision, Plaintiffs sought discovery concerning the improper communications, along with curative measures, efforts which have been rebuffed by Defendants.

(3) Cablevision has failed to provide notice, as directed by the Court, to all of the prospective collective class members – defined in the Complaint as "Field Service Technicians, or similar titles..." *See* Compl. ¶ 75. Specifically, Plaintiffs' counsel has been contacted by numerous individuals holding the title of Network Technician, including former Field Service Technicians, who perform similar duties alongside the Field Service Technicians – notably servicing Cablevision's customers out in the field. Network Technicians are plainly within the definition of the collective class, but did not receive notice from Cablevision as required by the Court's notice directions.

In connection with these issues, Plaintiffs seek the following relief: (i) date-certain document production, and date-certain depositions, consistent with the Court's August 5, 2016 Bench Order and Plaintiffs' October 20, 2016 email seeking production; (ii) discovery into Defendant Cablevision's "Voluntary Separation Plan" ("VSP")[1] and Defendants' decision to administer notice of VSP eligibility to collective class members during the notice period, (iii) remedial notice to FLSA collective class members who received VSP communications; (iv) discovery of Network Technicians, and remedial notice in connection with eligible former Field Service Technicians and all Network Technicians who were incorrectly excluded from eligibility in the collective class; and (v) injunctive relief prohibiting any further communications, other than those specifically directed by the Court, between Defendants and the putative collective class relating to, impacting, or potentially impacting FLSA rights. Plaintiffs also seek leave to amend their Class Action Complaint to add Altice N.V. and Altice USA[2] as parties, add a Brooklyn Class Representative, and clarify the scope of class claims.

---

[1] Interchangeably referred to by Cablevision as the "Voluntary Separation Program."
[2] Altice is an international telecom company which acquired Cablevision in or about the summer of 2016.

**II.   Defendants' Position Regarding the Court's Orders**

*Defendants have neither violated this Court's orders nor inhibited the progress of this litigation. As counsel discussed with Your Honor in August, discovery would proceed in two phases: a first phase concerning Plaintiffs' anticipated conditional certification motion to be completed immediately; and a broader second phase regarding the merits that would be discussed with Your Honor at a Case Management Conference.*

*Since the appearance of the undersigned as Defendants' replacement counsel, Plaintiffs have not sought to confer regarding the second phase of discovery or had any contact with Defendants at all. Rather, they drafted this letter and lodged accusations of stonewalling and delay. Defendants, in contrast, provided Plaintiffs with a proposed Case Management Plan to govern the remainder of discovery which the parties are continuing to discuss and hope to have an agreement about prior to the December 9th conference.*

*More specifically, Defendants respond below to each issue raised by Plaintiffs below and object to the various forms of "relief" Plaintiffs' seek.*

**1.    Discovery Disputes**

**1A.   Plaintiffs' Position - Cablevision has Refused to Provide Discovery as Ordered by the Court.**

At the first Initial Conference in August, the Court ordered that the parties should engage in "open file discovery," and expressly directed Cablevision to produce forthwith and without waiting for any formal demands: (i) the documents Plaintiff requested for their collective class motion (with the exception of emails), and (ii) as many as four initial corporate witnesses for deposition, to testify with respect to Cablevision's policies and practices pertinent to the Complaint. Defendants have delayed the litigation with last-minute productions, refused to follow through on supplemental production requests, and refused to produce any witnesses for depositions, in contravention of the Court's August Order.

More specifically, consistent with the August Order, Plaintiffs requested certain documents (including policy documentation) relevant to Plaintiffs' reply brief in support of Plaintiffs' Initial Motion for Collective Class Certification. Defendants' withheld any production until the day before the Plaintiffs' reply deadline, and then provided an incomplete production. *See* Email Chronology, Ex A. Cablevision *only* produced records specifically relating to the Named Plaintiffs', and did not include any policy documents or collective class discovery as requested. Moreover, the documents that were produced were improperly scrubbed of critical information – for example, the daily scheduling data produced excluded the "comments" section, where the Named Plaintiffs would often write contemporaneous notes such as "no lunch" or other similar comments.

After the Court granted conditional certification, on September 22, counsel for Plaintiffs held a two-hour meet and confer call with Charles Stiegler (predecessor counsel, along with Allan Bloom of Proskauer) in an attempt to facilitate compliance with the Court's August Order,

36067404v.2

given the deficiencies in document production and Cablevision's asserted inability to schedule the Court-directed depositions. Defense counsel indicated that Cablevision would be willing to produce four deponents for deposition, as directed, and that a compromise could be worked out regarding the remaining document production deficiencies. Counsel requested that Plaintiffs send an email detailing the document deficiencies, and Plaintiffs' counsel obliged. *See* Ex. A.

On October 26, Counsel for Plaintiffs, now joined by co-counsel David Slarskey, participated in a conference call with Allan Bloom to discuss Cablevision's continuing nonproduction of documents, and its failure to schedule of depositions. *See* Ex. A. Mr. Bloom indicated that Cablevision was now unwilling to schedule depositions or agree to produce additional documents, beyond those relating to the Lead Plaintiffs that had already been produced. Plaintiffs' counsel explained that the Court's August Order did not give Cablevision the discretion to decide which records to produce and which to withhold, but instead was broadly (and emphatically) explained as "open file," to be conducted without resort to obstructive disputes. Counsel for Defendants identified no substantive objection to the requested documents.

Defendants' counsel, Mr. Bloom (with whom Class Counsel has long had a collegial relationship), suggested that the parties agree on a proposed case management plan complete with staged discovery milestones which could be presented to Your Honor at the upcoming conference. Class Counsel, despite strong initial reluctance, relented and agreed. *See* Ex. A.

In deference to Mr. Bloom's and Cablevision's purported concerns about production, Plaintiffs requested that Defendants propose *any* discovery schedule that would be acceptable to Cablevision, anticipating that the parties could then negotiate appropriate deadlines. After follow-up emails and several calls during which Defendants' counsel represented that he would confer with his client to propose a schedule, Plaintiffs were next informed that Defendants' were changing counsel, and that no discovery plan was either in the works, or would be negotiated with Plaintiffs, prior to the next appearance before the Court. *See* Ex. A.

It has now been more than three months since the August Order, and Defendants have failed to produce a single witness for deposition, or a single Cablevision policy document relevant to the litigation. Cablevision has produced approximately 2,000 pages of documents, all relating specifically to the lead Plaintiffs, and consisting only of payroll and personnel data. In light of Defendants' failure to produce the discovery directed by August Order, and Cablevision's apparent unwillingness to agree to a discovery schedule, Plaintiffs request the entry of a discovery order that (i) requires Defendants to produce all non-ESI documents identified in Plaintiffs' Counsel's email to Defendants of October 20, 2016 (identifying deficiencies from collective class motion practice) (*see* Ex. A) and those non-ESI documents in Plaintiffs recently served Request for Production of Documents, (*see* Ex. B), with a first production of documents within 14 days, and continued rolling production thereafter, to be completed no later than December 30, 2016; (ii) requires Defendants to meet and confer with Plaintiffs as to dates for depositions for those witnesses identified in Plaintiff's October 20, 2016 email, (*see* Ex. A), with dates to be determined no later than December 22, 2016, and all such initial depositions to be completed by February 15, 2017; (iii) requires the parties execute a stipulation for the Court's so-ordered signature that requires the aforementioned depositions to

take place during the dates and times identified therein and sets forth a timeline for ESI discovery.

**1B.   Defendants' Position - Defendants Have Not Refused to Provide Court-Ordered Discovery**

*Prior to the August Initial Conference, counsel agreed on a discovery plan and were prepared to submit it to Your Honor for approval. Rather than adopt the plan, however, the Court ordered streamlined discovery relating to Plaintiffs' anticipated conditional certification motion. The Court never ordered "open file" discovery nor would that even be possible in a class action where the class has not yet been fully defined. Defendants were ordered to produce policies, handbooks, and any similar documents related to the timekeeping systems, any information and files on the named plaintiffs and generally whatever documents the Plaintiffs would need to file their motion for conditional certification. Accordingly, on September 14, 2016, Defendants produced documents relating to the named plaintiffs as well as numerous documents sought by Plaintiffs, including employee handbooks and other policies[3]. This is the very discovery that the parties discussed during the August conference. At that conference, Your Honor stated that further discovery (e.g., document requests, interrogatories, depositions of plaintiffs, requests to admit) should be delayed until the parties returned for the Case Management Conference.[4]*

*With respect to depositions, the Court ordered Defendants to provide up to three deponents prior to the then-scheduled November conference. Your Honor said that Plaintiffs would be permitted to ask for additional depositions at that conference if needed. The first time Plaintiffs ever raised depositions with Defendants' prior counsel was September 22nd. Plaintiffs provided then-defense counsel with a list of names, however, never followed up with proposed dates or any formal notice. Plaintiffs then waited more than an entire month, until October 26, 2016, to raise the issue of scheduling depositions. Prior counsel informed Plaintiffs' counsel that these depositions were premature and that it made sense to wait until after the Case Management Conference and further document production to conduct these depositions.*

*Under the proposed Case Management Plan, document production and depositions will proceed according to the schedule agreed to between counsel.*

**2.   Voluntary Separation Program**

**2A.   Plaintiffs' Position - Cablevision has Unilaterally Communicated With Class Members in an Attempt to Obtain Releases of Claims.**

It is well-established that the Court's authority to regulate a defendant's communications with class members includes, and goes beyond, "communications that mislead or otherwise threaten to create confusion and to influence the threshold decision whether to remain in the

---

[3] Furthermore, Defendants did not "scrub" any documents prior to their production. The documents were produced as they are kept in the ordinary course of business.
[4] Despite this clear instruction, Plaintiffs thereafter served a set of document requests consisting of 159 individual items.

class." *In re Currency Conversion Fee Antitrust Litigation*, 361 F.Supp.2d 237, 252 (S.D.N.Y. 2005). Because they are "rife with potential for coercion," "[u]nsupervised communications" are improper if they seek "to eliminate putative class members' rights." *Id*. at 252-53; *see also Agerbrink v. Model Service LLC*, No. 14 Civ. 7841, (S.D.N.Y., Oct. 27, 2015). "[T]he need for a district court to ensure that all parties act fairly is especially great during the early stages of FLSA litigation," given the imbalance between employees and employers, and the possibility of coercion. *Id*.

On October 26, Plaintiffs learned that during the class notice process directed by the Court, Cablevision had unilaterally contacted collective class members regarding the VSP, and offered plaintiff class members, *inter alia*, the opportunity to "leave the organization with transition pay equal to three (3) weeks of base salary for each completed year of service," in exchange for agreeing to "sign (and not revoke) the Separation Agreement *and Release* provided by the Company." *See* Ex. C (VSP communications (emphasis supplied)).

Immediately after being informed of these improper communications between Cablevision and collective class members, counsel for Plaintiffs contacted predecessor counsel for Cablevision, seeking details concerning the extent of Defendants' contact with collective class members, assurances that there would be no further similar communications, and corrective measures to assure that the collective class members are not confused about their rights, coerced into releasing their claims, or otherwise improperly induced not to participate in the FLSA collective. *See* Ex. A.

In response, Defendants' predecessor counsel provided limited and conflicting details concerning the number and identity of class members contacted with the VSP offer, acknowledged that between 5% and 10% of those extended offers were collective class members, and declined to respond to the request for corrective measures. *See* Ex. A. Within days of this exchange, Plaintiffs learned that Cablevision was replacing Proskauer as its counsel.

Since the replacement of counsel, Plaintiffs' counsel has received a copy of the previously undisclosed VSP General Release ("VPS Release') associated with participation in the VSP. See Ex. D (VSP Release). Upon review, Cablevision's VSP Release unquestionably interferes with the Court's administration of FLSA notice. Notably, the fact that the VSP was offered at the same time as the administration of class notice and that the VSP Release contains a covenant not to sue (i) creates confusion for collective class members who had already opted into this lawsuit but always considered participation in the VSP; and (ii) directly discourages putative collective class members from participating in the FLSA collective. *See Id*. at § 3A.

The effect of Cablevision's improper communications has already been observed. For example, Plaintiffs' counsel was contacted by a putative collective class member who had already opted in to the lawsuit and wished to opt out after accepting the Voluntary Separation Program. This putative collective class member was adamant in his insistence – based on Cablevision's communications – that participation in the FLSA collective class action would jeopardize his ability to participate in the VSP, given Section 3A of the VSP Release. This is false, insofar as FLSA rights are not waivable. *See Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1962) (holding that rights under the FLSA are non-waivable); *see also*

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (A "[p]laintiff may not waive or otherwise settle FLSA claim[s] for unpaid wages for less than the full statutory damages unless the settlement is supervised by the Secretary of Labor or made pursuant to a judicially supervised stipulated settlement.").

Additionally, Class Counsel has been contacted by several collective class members seeking advice on whether or not participation in the VSP would release their FLSA collective class claims. While some collective class members *have* sought Class Counsel's advice on this matter, more troubling is that there are likely many more who have *not* reached out because they believed – erroneously – that they could only participate in the VSP or the collective action, but not both. The clear effect of the VSP has been to create confusion amongst the collective class members about their rights, and discourage participation in the class, by failing to include any information as to the collective class members' rights to participate in both the VSP and the FLSA collective action. This creates a serious risk that opt-in rate participation may be affected for putative class members, who may have decided to simply forgo FLSA collective class participation.

Under these circumstances, where there is demonstrated confusion arising out of Cablevision's unilateral communications, a protective order is warranted. *See Currency Conversion Fee Antitrust Litigation*, 361 F.Supp.2d at 252; *Agerbrink*, 14-cv-7841 (S.D.N.Y., Oct. 27, 2015). Plaintiffs accordingly request relief to preclude any unilateral communications between Cablevision and class members on the subject of any release of rights under the VSP. Plaintiffs further request (i) discovery as to the participation of class members in the VSP, and communications between Cablevision and class members on the subject, and (ii) remedial FLSA notice be sent to all affected collective class members, appropriately advising them of their rights to participate in the FLSA collective, as well as the VSP. Moreover, class counsel is deeply concerned with the effect that these communications will have on the NYLL claims, particularly since, unlike FLSA claims, the opt-out provisions under Rule 23 presume an already-existing fiduciary attorney-client relationship between the class members and Plaintiffs' counsel, which Cablevision circumvented by communicating directly with class members and soliciting releases.

**2B.    Defendants' Position - There Have Been No "Improper Communications" Between Defendants and Putative Class Members Concerning the Voluntary Separation Program**

*Plaintiffs claim that "Cablevision's VSP Release unquestionably interferes with the Court's administration of the FLSA notice" and believe that curative steps should be taken in the form of a protective order. As set forth below, the VSP does not interfere with the Court's administration of the FLSA notice and, as such, the severe remedy of a protective order is unwarranted.*

*On October 17, 2016, Defendants presented a Voluntary Separation Program ("VSP") to approximately 408 employees in Cablevision's Construction, Field-Service-Tech, Technical Compliance, and Technician Operations-OSP functions located in New York, New Jersey and Connecticut. The VSP permits eligible employees to voluntarily resign with transition pay equal*

to three weeks of base salary for each completed year of service. Eligible employees were required to indicate their intent to resign on or before December 1, 2016.[5]

Approximately 23 members of the putative class - Field Service Representatives assigned to facilities in the Bronx[6] at any time within the three years prior to this action's filing date - were eligible to participate in the VSP. A sample separation agreement was made available to eligible employees so that they could review it prior to expressing an intent to participate in the VSP. This sample release clearly and unequivocally informed employees that their decision to participate in the VSP in no way impacted their rights under the FLSA (and thus, their ability to participate in this action). In fact, the sample release noted that claims under the FLSA were specifically **excluded** from the release section of the agreement. See Ex. D.

Nothing in the offer of the VSP suggests an attempt to coerce or limit putative class members' rights to participate in the lawsuit. As such, there is no basis for entry of a protective order. "[A]ny order imposing a serious restraint on expression must be 'justified by a likelihood of serious abuses.' The 'mere possibility of abuses' is insufficient to support a ban on communications." Payne v. Goodyear Tire & Rubber Co., 207 F.R.D. 16, 19 (D. Mass. 2002) (citing Gulf Oil Co. v. Bernard, 452 U.S. 89 (1981); see also Wu v. Pearson Educ. Inc., No. 09 CIV. 6557, 2011 WL 2314778, at *6 (S.D.N.Y. June 7, 2011) ("In general, communications that are litigation-neutral—that do not alter the legal relationship between the defendants and members of a putative class—are not subject to restriction.").

The cases relied upon by Plaintiffs are inapposite. For example, in In re Currency Conversion Fee Antitrust Litigation, 361 F. Supp. 2d 237, 254 (S.D.N.Y. 2005), the defendants sent arbitration agreements to putative class members in order to forfeit their rights as potential plaintiffs in the litigation. Similarly, in Agerbrink v. Model Service LLC, No. 14 Civ. 7841, 2015 WL 6473005 (S.D.N.Y. Oct. 27, 2015), the court held that communications sent directly to potential class members implying negative consequences of the lawsuit from senior officer of the company has the "potential to chill participation" in the lawsuit.

Nothing of the sort has occurred here. The release agreement required for participation in the VSP includes an express statement that FLSA claims are **excluded** from the release. Furthermore, Plaintiffs have come forward with **no** evidence - other than their own conclusory allegations - that communications concerning the VSP caused any confusion or hindered the conditional certification process. Adair v. EQT Prod. Co., 2011 WL 110512 (W.D. Va. Sept. 28, 2011) ("'[A court] may not exercise the power [to restrict communications] without a specific record showing by the moving party of the particular abuses by which it is threatened…the mere possibility of abuses does not justify routine adoption of a communications ban that interferes with the formation of a class or the prosecution of a class action in accordance with the Rules."). Thus, Plaintiffs have not satisfied their heavy burden to justify issuance of a protective order or some sort of supplemental notice to the 23 putative class members who were eligible for the VSP.

---

[5] This time period has now been extended until December 15, 2016.
[6] Employees in Brooklyn were not eligible to participate in the VSP.

3.  **Network Technicians**

    3A.  **Plaintiffs' Position - Cablevision Failed to Provide Notice to all Members of the Collective Class in Violation of the Court's Order (Plaintiffs' Position).**

Class Counsel has been contacted by numerous Network Technicians, who work in the field, ride in trucks, and work on the same tickets and ticketing system as Field Service Technicians, inquiring as to why they did not receive notice of the lawsuit. Most, if not all, of the Network Technicians were previously Field Service Technicians with Cablevision; thus, they are acutely aware of the similarities between the two positions and question why they were not included in the lawsuit. In addition to using the same (or nearly identical) tickets and ticketing systems, the Field Service and Network Technician positions are substantially similar: both begin and end their day at their respective depos, procure a Cablevision truck for work exclusively in the field on service-related issues, and encounter the same timekeeping pressures. *See* Ex. E (Affidavit of Dion Pemberton). The only practical difference between Network Technicians and Field Service Technicians is what is being serviced – specifically, the Network Technicians focus on installing, provisioning and maintaining networks *outside* of the customers' home or office, whereas the Field Service Technicians perform similar functions for Cablevision products *within* the customers' home or office. For example, Network Technicians often perform escalation work for the Field Service Technicians when the troubleshooting requires maintenance of networks feeding into the customers' home or office and not the products located directly inside. Thus, based on the broad definition of the collective class in the Complaint, all Network Technicians are "similar" such that they are within the scope of the collective class and should be issued notice and an opportunity to opt-in to the FLSA collective.

Finally, some of the current Network Technicians who have contacted class counsel's office, were employed as Field Service Technicians during the collective class period and only recently made the lateral move to Network Technicians. Based on these representations, these Network Technicians appear to be within the collective class based on their time as Field Service Technicians within the collective class period as well, yet they still did not receive notice. Plainly, supplemental notices should go out to Network Technicians, including those Network Technicians who were previously Field Technicians.

    3B.  **Defendants' Position - Plaintiffs Improperly Seek to Expand the Putative Class to Cover a Completely Different Job Title Never Before Mentioned Previously via a "Discovery Dispute" Letter (Defendants' Position)**

*Under the guise of a "discovery dispute," Plaintiffs ask the Court to amend their Complaint and add a completely different job title to this case - Network Technicians - despite the fact that neither their complaint nor their motion for conditional certification mention this position at all. This request should be denied.*

In paragraph 2 of their Complaint (ECF Docket No. 1), Plaintiffs define the "collective class" as follows:

> 2. The Collective Class is made of all persons who are or have been employed by Defendants as **Field Service Technicians** assigned to Defendants' facilities in Brooklyn and the Bronx at any time within the three years prior to this action's filing date through the date of the final disposition of this action (the "Collective Class Period") and who were subject to Defendants' policy of failing to pay minimum wage compensation for all hours worked and failing to pay overtime premiums for all hours worked over 40 in a given workweek.

Similarly, in connection with their Motion for Conditional Certification, Plaintiffs requested "the Court to authorize that notice be disseminated to all individuals who worked at Cablevision **as Field Service Technicians** since 2010." (Dkt. No. 34 at 15). Although Plaintiffs sought a six-year FLSA notice period, the Court denied this request and set forth in its September 15, 2016 Order as follows:

> Defendants are correct that the notice of collective action should invite only those employees who were employed by defendants within a three-year period of limitations, counting backwards from the filing date of this lawsuit, to joint this lawsuit….defendants, within 20 days, shall provide…the names and addressed of **all field service representatives** working from, or supervised by, the Bronx and Brooklyn facilities, within **three years** prior to the date of the filing of this lawsuit.

(Dkt. No. 38) *(emphasis added)*

As ordered by the Court, Defendants provided Plaintiffs with "the names and addresses of **all field service representatives** working from, or supervised by, the Bronx and Brooklyn facilities, within **three years** prior to the date of the filing of this lawsuit." Plaintiffs' contention that Defendants failed to comply with the Court's Order is without merit. Network Technicians are simply **not** part of this case. To the extent Plaintiffs wish that they were, the avenue to raise it is not through a purported "discovery dispute" that accuses Defendants, without any basis in fact, of violating a court order.

\*\*\*

For the foregoing reasons, the parties would like to address these issues with the Court and Plaintiffs request the relief identified herein. In addition, Plaintiffs would like to discuss with the Court Plaintiffs' intent to amend the Complaint to add necessary parties Altice N.V. and Altice USA, add a Brooklyn Class Representative, and clarify the scope of class claims. *Defendants oppose Plaintiffs' request to add additional parties as Plaintiffs' employer has remained the same and there is no need to amend the complaint simply to add a new corporate parent.*

Honorable Alvin K. Hellerstein<br>
December 7, 2016<br>
Page 11 of 11

Should you have any questions, please do not hesitate to contact us.

        Sincerely,

        __/s/_____

        Counsel for Plaintiffs

        Christopher Q. Davis, Esq.
        Rachel M. Haskell, Esq.
        The Law Office of Christopher Q. Davis
        225 Broadway Suite 1803
        New York, New York 10007
        646-430-7930 (main)
        646-349-2504 (fax)

        David Slarskey
        Slarskey LLC
        800 Third Avenue, 18th Floor
        New York, NY 100012 (212)
        658-0661 (phone)

        Counsel for Defendants

        Robert S. Whitman, Esq.
        Howard M. Wexler, Esq.
        Seyfarth Shaw LLP
        620 Eighth Avenue, 32nd Floor
        New York, New York 10018
        Telephone: (212) 218-5500