**Exhibit 1_Settlement Agreement**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X

THOMAS LOBBE, EDWIN VEGA, ANTHONY
COLON, RUBEN DEJESUS, WILLIAM
GILBERT GARVIN, and DION PEMBERTON,
individually and on behalf of all others similarly
situated,

                Plaintiffs,

     -against-

CABLEVISION SYSTEMS NEW YORK CITY
CORPORATION, CABLEVISION SYSTEMS
CORPORATION, CSC HOLDINGS, LLC,
ALTICE USA, and ALTICE TECHNICAL
SERVICES USA,

                Defendants.

------------------------------------------------------- X

Civil Action No. 1:16-cv-02207-AKH

## SETTLEMENT AGREEMENT

      This Collective Action Settlement Agreement is made and entered into between the Parties, as defined below, arising out of the above-captioned lawsuit.

## SECTION 1 – DEFINITIONS AND BACKGROUND

### A.    Definitions

**1.1.**    The term "Administrator" shall refer to RG/2 Claims Administration LLC.

**1.2.**    The term "Class Counsel" or "Plaintiffs' Counsel" means the Law Office of Christopher Q. Davis, PLLC.

**1.3.**    The term "Class Period" shall refer to (a) with respect to claims under the Fair Labor Standards Act ("FLSA"), the time period beginning three years before the filing with the Court of the Named Plaintiffs' or Opt-In Plaintiffs' consent to join the Litigation and ending on the date of the Court's Preliminary Approval order, or 60 calendar days from filing the Preliminary Approval motion, whichever is shorter; and (b) with respect to claims under the New York Labor Law ("NYLL"), the time period beginning on March 22, 2010 and ending on the date of the Court's Preliminary Approval order, or 60 calendar days from filing the motion for Preliminary Approval, whichever is shorter.

**1.4.**    The term "Counsel" shall refer to Class Counsel and Defendants' Counsel, collectively.

**1.5.**     The term "Court" shall refer to the United States District Court for the Southern District of New York.

**1.6.**     The term "Defendants" shall refer collectively to Cablevision Systems New York City Corporation, Cablevision Systems Corporation, CSC Holdings, LLC, Altice USA, Inc., and Altice Technical Services US Corp.

**1.7.**     The term "Defendants' Counsel" shall refer to Seyfarth Shaw LLP.

**1.8.**     The term "Effective Date" shall refer to the later of: (i) if an appeal has been filed from the order of the Court granting Final Approval, the date on which the appeal and any subsequent proceedings are fully and finally disposed of; or (ii) thirty-five (35) calendar days following the date of Final Approval if no appeal is filed.

**1.9.**     The term "Final Approval" shall refer to the issuance of an order by the Court granting final approval to this Settlement Agreement, holding that it is a fair, reasonable and adequate settlement of the claims that were asserted or could have been asserted in the Litigation, and directing a final judgment to that effect, and dismissing the Litigation with prejudice.

**1.10.**     The term "Gross Settlement Amount" shall refer to One Million Four Hundred Thousand Dollars and Zero Cents ($1,400,000.00). Under no circumstances shall any Defendants be obligated to make any payments pursuant to this Settlement Agreement (other than payments to their own respective counsel) that would increase the Gross Settlement Amount above this amount, including without limitation, payments for employer-side tax obligations.

**1.11.**     The term "Litigation" shall refer to the civil action filed with the Court on or around March 22, 2016 by Plaintiffs entitled *Lobbe, et al. v. Cablevision Systems New York City Corporation, et al.,* 16-cv-02207 (AKH) (S.D.N.Y.).

**1.12.**     The term "Named Plaintiffs" shall refer to Thomas Lobbe, Edwin Vega, Anthony Colon, Ruben DeJesus, William Gilbert Garvin, and Dion Pemberton.

**1.13.**     The term "Net Settlement Fund" shall refer to the Gross Settlement Amount less: (a) attorneys' fees and costs awarded to Class Counsel by the Court pursuant to Section 3.2; (b) Service Payments to the Named Plaintiffs and select Opt-In Plaintiffs identified by Class Counsel and agreed upon by Defendants' Counsel pursuant to Section 3.3 as approved by the Court; and (c) employer Federal Insurance Contributions Act (FICA) contributions pursuant to Section 3.5.

**1.14.**     The term "Opt-In Plaintiffs" shall refer to: Clarence Jermaine Adams, Miguel Almonte, Steven C. Ashurst, Miguel Baker, William Brehon, Manasch Broadus, Justin G. Browne, Shawndale Bryant, Pierre Cajuste, Deryck Campbell, Bertie Carrington, Tyuaris S.Chance, Phillip Cover, Darryl De Freitas, Alman Downey, Rafael Antonio Dueno, Darryl Farmer, Malcolm Fobb, Keith A. Frazier, Jr., Derek Gary, Miguel Gaspar, Milton Gaud, Marlon Gayle, William Graham, Anthony St. Patrick Hayle, Felix Hernandez, Jr., Steven Dwayne Holloway, Karl Hughes, Cory D. James, Orville Kelly, Kevis Charles, Renford Lamoth, Quedy Lantigua, Asim Jamel Mason, Michael B. McCollum, Darryl McCorey, Neville McFarlane, Angel Enrique Melendez, Reynold F. Meyers, John Modeste, NNamdi Nedd, Daniel Oquendo, Nathan Perez,

Boris Hugh Reid, Andre Riggs, Watson Roberts, Arnold Samuels, Lyndon Selby, Lennard Small, Jonathan Sustache, James Thomas, Michael Vasquez, Yvette Marie Walker, Markeen Watson, NaQuan Williford, Marlo Zelaya, George Bell, Tyrone Bentley, Lebin Betances, Raymond Birchwood, Edward Chen, Malik Coleman, Jarell Fulton-Hines, Levar Graneau, Ortis Haynes, Nigel London, Derrick Mack, Andre Norfleet, Brent Ramdeen, Trevor Ramsey, Dario Reid, Michael Rosebourough, Conroy Solomon, Damion Vangenderen, Juan Veras, and Richard Wilcher.

**1.15.**   The term "Parties" shall refer to Plaintiffs and Defendants collectively.

**1.16.**   The term "Plaintiffs" shall refer to the Named Plaintiffs and the Opt-In Plaintiffs.

**1.17.**   The term "Preliminary Approval" shall refer to the issuance of an order by the Court, substantially in the form attached as Exhibit 2 to this Settlement Agreement, holding preliminarily that it is a fair and reasonable settlement of the claims that were asserted or could have been asserted in the Litigation.

**1.18.**   The term "Pro Rata Share" shall refer to an amount allocated to each Plaintiff from the Net Settlement Fund. That amount shall be calculated by dividing an individual Plaintiff's total Weeks Worked by the total Weeks Worked by all Plaintiffs combined, and then multiplying the resulting fraction by the Net Settlement Fund.

**1.19.**   The term "QSF" shall refer to a Qualified Settlement Fund to be created by the Administrator to distribute settlement funds to Plaintiffs and pay all other amounts contemplated by this Settlement Agreement.

**1.20.**   The term "Released Parties" shall refer to Defendants, plus all of their respective past, present and future parents, subsidiaries, affiliates, predecessors, successors, directors, officers, members, employees, and anyone else acting for any of them.

**1.21.**   The term "Service Payments" shall refer to payments to the Named Plaintiffs and certain Opt-in Plaintiffs in recognition of their efforts on behalf of all the Plaintiffs in the Litigation. Service Payments shall not exceed $85,000.00 and shall be paid from the Gross Settlement Amount.

**1.22.**   The term "Settlement Agreement" shall refer to this Agreement entered into between Plaintiffs and Defendants.

**1.23.**   The term "Settlement Distribution Check" shall refer to a check issued by the Administrator to a Plaintiff pursuant to Section 3 of this Settlement Agreement.

**1.24.**   The term "Settlement Notice" shall refer to the form attached as Exhibit 1 hereto, to be provided respectively to Plaintiffs.

**1.25.**   The term "Settlement Notice Response Deadline" shall refer to a date thirty (30) calendar days from the Administrator's mailing of the Settlement Notice (as indicated by the postmark thereupon) in accordance with Section 2.7 herein.  If a Settlement Notice is returned undeliverable, the Settlement Notice Response Deadline for such Plaintiff shall be thirty (30)

calendar days from the date of the second mailing, but no more than sixty calendar (60) days from first mailing.

**1.26.**   The term "Weeks Worked" shall refer to those workweeks during the Class Period for which a Plaintiff received pay for actual work performed and shall not include workweeks during which a Plaintiff performed no work, even if the Plaintiff was paid for such workweeks.

### B.   Background

**1.27.**   In the Litigation, the Plaintiffs allege that Defendants violated the Fair Labor Standards Act of 1938 ("FLSA") and the New York Labor Law ("NYLL") by regularly expecting or requiring Plaintiffs to perform work "off the clock," primarily by working through their unpaid 30-minute lunch breaks and also by failing to pay for compensable pre-shift and post-shift activities.  Plaintiffs also allege that Defendants violated the NYLL by failing to provide Plaintiffs with accurate wage statements.

**1.28.**   Defendants deny the allegations of wrongdoing in the Litigation and specifically deny that Plaintiffs were denied payments to which they were entitled, including without limitation overtime pay, "gap pay," and other wages, and that Defendants failed to furnish accurate wage statements. Defendants, by entering into this Settlement Agreement, expressly deny any liability or wrongdoing toward any Plaintiffs.

**1.29.**   The Parties desire to fully and finally settle, resolve, and discharge any and all actual and potential claims and disputes that were asserted or could have been asserted by Plaintiffs in the Litigation. Accordingly, the Parties intend that this Settlement Agreement shall constitute a full and complete settlement and release of claims against Defendants pursuant to the terms described herein.

**1.30.**   This Settlement Agreement was reached after extensive formal and informal discovery and private arms-length negotiations between Counsel, including two full days of mediation with the assistance of an experienced and highly qualified mediator, Martin Scheinman, Esq. The Parties, Counsel and the mediator believe that this Settlement Agreement provides a fair and reasonable settlement for all of the claims of the Plaintiffs.

**1.31.**   The terms of the Settlement Agreement are based on a thorough evaluation by Class Counsel of facts obtained through investigation and discovery. Class Counsel represents that they conducted a thorough investigation into the facts of the Litigation and have diligently pursued an investigation of Plaintiffs' claims against Defendants. Based on their own independent investigation and evaluation, Class Counsel is of the opinion that the Settlement Agreement is fair, reasonable, and adequate, and is in the best interests of the Plaintiffs in light of all known facts and circumstances, including the defenses asserted by Defendants and the delay and uncertainty of future litigation, trials, and appeals.

### SECTION 2 – SETTLEMENT APPROVAL

**2.1.**   Stay Of Litigation. The Parties hereby agree to a stay of all discovery, deadlines, and other activity in or related to the Litigation other than in furtherance of this Settlement Agreement

unless and until the Court enters an order rejecting the Settlement Agreement.

**2.2.**   <u>Mutual Full Cooperation.</u> As soon as practicable after execution of this Settlement Agreement, the Parties shall take all necessary steps to secure the Court's Preliminary and Final Approval of this Settlement Agreement and to effectuate all aspects of this Settlement Agreement. The Parties and Counsel agree to cooperate fully with each other to obtain Preliminary and Final Approval of, and to accomplish the terms of, this Settlement Agreement.

**2.3.**   <u>Approval Procedure.</u> The Settlement Agreement requires the occurrence of all of the following events: (a) execution of the Settlement Agreement by the Parties; (b) submission of the Settlement Agreement to the Court together with Plaintiffs' Unopposed Motion for Preliminary Approval; (c) entry of an order by the Court granting Preliminary Approval of the Settlement; (d) Court approval of the method of distribution and the form and content of the Settlement Notice; (e) distribution of the Settlement Notice to Plaintiffs as described in Section 2.7; (f) submission to the Court of Plaintiffs' Unopposed Motion for Final Approval and Motion for Attorneys' Fees and Costs; (g) a Court order granting Final Approval; (h) occurrence of the Effective Date; and (i) distribution of Settlement Distribution Checks within twenty-one (21) calendar days of the Effective Date.

**2.4.**   <u>Duties Of The Parties Before Preliminary Approval.</u>

    A.   No later than fifteen (15) calendar days after the full execution of this Settlement Agreement, Class Counsel shall submit this Settlement Agreement to the Court as part of Plaintiffs' Unopposed Motion for Preliminary Approval of the Settlement Agreement, for determination by the Court as to its fairness, adequacy, and reasonableness, and issuance of an order: (a) preliminarily approving this Settlement Agreement; (b) approving the form and content of the proposed Settlement Notice; and (c) directing the mailing of the Settlement Notice to Plaintiffs.

    B.   Class Counsel shall engage the Administrator prior to submitting their Motion for Preliminary Approval.

**2.5.**   <u>CAFA Notice.</u>  No later than ten (10) business days after Plaintiffs submit their Motion for Preliminary Approval, Defendants shall timely provide notice as required by the Class Action Fairness Act ("CAFA").

**2.6.**   <u>Duties of the Parties Following Preliminary Approval.</u>

    A.   No more than ten (10) business days after Preliminary Approval, Defendants shall provide the Administrator and Class Counsel with a class contact list, including names, postal addresses, and, if known, personal email addresses of the Plaintiffs as reflected in Defendants' personnel records. These records shall be confidential and shall not be used for any purpose other than effectuation of this Settlement Agreement.

    B.   No later than fifteen (15) business days after the Settlement Notice Response Deadline, or pursuant to a schedule set by the Court, Class Counsel shall file a Motion for Final Approval and a separate Motion for Attorneys' Fees and Costs.

**2.7.**   Settlement Notice and Objections.

    A.   <u>Settlement Notice to Plaintiffs.</u>

        (1)   Within ten (10) calendar days of receiving the information described in Section 2.6.A, the Administrator shall mail the Court-approved Settlement Notice (Exhibit 1) to the each Plaintiff (a) by First Class United States mail, postage prepaid, to his/her last known residential address as reflected in Defendants' personnel records, and (b) by email to each of the Plaintiff's last known personal email address, to the extent that personal email addresses are included in Defendants' personnel records.  Each Plaintiff will receive the Settlement Notice and an opportunity to object pursuant to Section 2.7.B below.

        (2)   With respect to Settlement Notices sent by email, no follow-up or supplemental distribution shall be performed for any email message returned as undeliverable or as to which receipt or review by the Plaintiff is unconfirmed.  With respect to Settlement Notices sent by postal mail, the Administrator shall perform one skip trace to obtain the correct address of any Plaintiff for whom the Settlement Notice is returned by the U.S. Postal Service as undeliverable.  The Administrator shall notify Counsel of any such undeliverable post mail Settlement Notice.  The Administrator shall send one remailing to those Plaintiffs whose first postal mailing is returned as undeliverable.  The Administrator shall keep accurate records of the dates on which it sends Settlement Notices.

    B.   <u>Objections.</u>

        (1)   A Plaintiff may object to this Settlement Agreement, as set forth below, solely to the extent that this Settlement Agreement pertains to such individual's rights under the Settlement Agreement.

        (2)   An individual Plaintiff who wishes to so object must do so in writing. To be considered, a written objection must be mailed to the Administrator via First-Class United States Mail and be received by the Administrator no later than the applicable Settlement Notice Response Deadline. The written objection must be signed and must include the words, "I object to the Settlement proposed in the *Lobbe v. Cablevision* litigation as it relates to my rights under the Settlement Agreement," as well as all of the reasons for the objection. Any reasons not included in the written objection shall not be considered. The written objection must also include the name (and former names, if any), and current address for the individual Plaintiff making the objection. The Administrator shall stamp the postmark date on the original of each objection that it receives and shall, within one (1) business day of receipt, serve copies of each such objection on Counsel. Class Counsel shall file the date-stamped objections with the Court as part of Plaintiffs' Motion for Final Approval.

     (3)    Counsel shall file with the Court written responses, if any, to any filed objections as part of Class Counsel's Motion for Final Approval, pursuant to the timing set forth in Section 2.6.B.

## SECTION 3 – SETTLEMENT PAYMENTS

**3.1.**    The Gross Settlement Amount and Net Settlement Fund shall be used for the payment of the amounts set forth below.

**3.2.**    <u>Attorneys' Fees And Costs.</u> In their Motion for Final Approval, Class Counsel shall petition the Court for an award of attorneys' fees and costs. Class Counsel agree that any award of attorneys' fees shall not exceed twenty-five percent (25%) of the Gross Settlement Amount. Class Counsel further agrees that any award of costs shall not exceed $35,000.00. Defendants shall not oppose any request for attorneys' fees or costs by Class Counsel meeting these conditions so long as the Court approves this Settlement Agreement in substantially the form in which it was submitted for approval. To the extent the Court awards a lesser amount in attorneys' fees or costs, this Settlement Agreement shall remain in full force and effect and be binding upon the Parties, with the amount of such reduction to be added to the Net Settlement Fund for distribution to Plaintiffs according to the procedures herein.

**3.3.**    <u>Service Payments.</u> No more than $85,000.00 shall be paid from the Gross Settlement Amount as Service Payments to the Named Plaintiffs and certain Opt-In Plaintiffs.  Defendants shall not oppose any request for Service Payments meeting this condition and shall not oppose Plaintiffs' recommended allocation of the Service Payments.  The Service Payments are to be allocated as follows: Plaintiff Thomas Lobbe shall receive Twenty Thousand dollars ($20,000.00); Plaintiff Edwin Vega shall receive Twenty Thousand dollars ($20,000.00); Plaintiff William G. Garvin shall receive Ten Thousand dollars ($10,000.00); Plaintiff Anthony Colon shall receive Seven Thousand Five Hundred dollars ($7,500.00); Plaintiff Ruben DeJesus shall receive Six Thousand Five Hundred dollars ($6,500.00);  Plaintiff Dion Pemberton shall receive Two Thousand Five Hundred dollars ($2,500.00); Plaintiff Karl Hughes shall receive Six Thousand dollars ($6,000.00); Plaintiff Levar Graneau shall receive Two Thousand Five Hundred dollars ($2,500.00); Plaintiff Michael Roseborough shall receive Two Thousand Five Hundred dollars ($2,500.00); Plaintiff William Graham shall receive Two Thousand Five Hundred dollars ($2,500.00); Plaintiff Neville McFarlane shall receive Two Thousand Five Hundred dollars ($2,500.00); and Plaintiff Miguel Almonte shall receive Two Thousand Five Hundred dollars ($2,500.00).

In the event the Court sets the amount of the Service Payments, then the Plaintiffs shall be bound by such a ruling. In the event the Court denies approval of Service Payments, or reduces the amount of the Service Payment to any individual, such individual(s) shall receive only the amount, if any, as the Court has approved, plus their Pro Rata Share pursuant to Section 3.4.

**3.4.**    <u>Distribution of the Net Settlement Fund.</u>

    A.    Each Plaintiff shall receive a payment in the amount of his/her Pro Rata Share.

B.  In the event any amount of the Net Settlement Fund is not paid to the Plaintiffs (whether because of delivery failures or failures by Plaintiffs to timely and properly present Settlement Distribution Checks for payment, or otherwise), such amount shall be refunded to Defendants. Such refund payment shall be made by the Administrator on or around ninety (90) calendar days following the final deadline for cashing the Settlement Distribution Checks.

**3.5.**  <u>Settlement Administration.</u>

A.  The Administrator shall be responsible for administering the Settlement, including without limitation establishing the QSF, calculating each Plaintiff's Pro Rata Share, distributing the payments called for by this Settlement Agreement, printing and mailing the notice to be sent along with the Settlement Distribution Checks, as set forth in Section 3.7.A and 3.7.B below, withholding taxes from such payments, issuing IRS Forms W-2 and 1099 in connection with such payments, and processing payment of all employer-side tax obligations arising out of such payments.

B.  The Administrator shall set up a "reverse positive pay system" in which banks send the Administrator images of the front and back of each check cashed by Plaintiffs before transferring funds to the bank where the check was cashed, so that the Administrator can determine whether any such checks have been modified or altered.

C.  The Administrator shall pay standard employer-side tax obligations, including the Employer Federal Insurance Contributions Act (FICA) amount, from the QSF.

**3.6.**  No more than ten (10) business days after the Effective Date, Defendants shall transfer the Gross Settlement Amount to the QSF.  No more than twenty-one (21) calendar days after the Effective Date, the Administrator shall mail Settlement Distribution Checks to those Plaintiffs who are entitled to receive such checks pursuant to the terms of this Settlement Agreement.

**3.7.**  <u>Cashing of Checks by the Plaintiffs.</u>

A.  Each Plaintiff shall have ninety (90) calendar days from the check mailing date to endorse the Settlement Distribution Check issued to him/her and present it for payment. Each Settlement Distribution Check will include a notice clearly stating that he/she has 90 calendar days from the check mailing date to endorse and present the Settlement Distribution Check for payment.

B.  To be accepted for payment, the Settlement Distribution Check must be endorsed by the Plaintiff with no alteration to the language thereupon. Any alteration of such language by a Plaintiff shall render the check null and void, and by making the alteration, the Plaintiff shall be deemed to have forfeited his/her right to receive a payment from the Net Settlement Fund.  Each Settlement Distribution Check will include a notice clearly stating that any alterations to the language thereupon will result in forfeiture of his/her right to receive payment from the Net Settlement Fund.

    C.      If any Plaintiff deposits a Settlement Distribution Check that he or she has failed to endorse or has altered, the Administrator shall make its best efforts to ensure that this check is not honored.

    D.      If a Settlement Distribution Check is paid despite the Administrator's best efforts, the Plaintiff shall be deemed to have endorsed the check properly and shall be bound by all waivers, releases and other provisions of this Settlement Agreement, including without limitation the release of claims applicable to such Plaintiff.

    E.      To the maximum extent permitted by law, a Plaintiff shall be bound by all provisions of this Settlement Agreement regardless of whether that person has filed a claim, that person has properly or timely presented for payment the check issued pursuant to this Settlement Agreement, or the check is honored.

**3.8.**    <u>Tax Reporting</u>.  All payments to the Plaintiffs under this Settlement Agreement shall be allocated as 50% lost wages, less all applicable withholdings and deductions required by law, which shall be reported as wage income on a IRS Form W-2 to be issued to Plaintiffs; and 50% as non-wage income, which will be reported on IRS Form 1099, the former reflecting payments in settlement of claims for unpaid straight time and overtime wages, and the latter reflecting payments in settlement of claims for liquidated damages and pre-judgment interest as provided by law.  Plaintiffs shall provide to the Administrator any tax-related documentation (such as an IRS W-4 and/or NY IT 2104) necessary to effectuate payments pursuant to this Agreement.  Payments to Class Counsel with respect to attorneys' fees and costs shall be reported on a Form 1099 prepared and issued by the Administrator to Class Counsel.

**3.9.**    <u>Tax Consequences</u>.  The Plaintiffs and Class Counsel acknowledge and agree that Defendants have not made any representations regarding the tax consequences of any monies they may receive pursuant to this Settlement Agreement.  The Plaintiffs and Class Counsel expressly acknowledge and warrant that they shall each be responsible for all federal, state and local tax liabilities that may result from their respective payments described herein and hereby warrant that Defendants shall bear no responsibility for any such tax liabilities.  Plaintiffs and Class Counsel further agree and acknowledge that they shall indemnify Defendants for their respective shares of any possible federal, state or local tax liabilities resulting from such payments and that Plaintiffs and Class Counsel shall reimburse any taxes, interest and/or penalties assessed against Defendants for any such tax liabilities caused by such payments.  Plaintiffs and Class Counsel shall each only be responsible for reimbursement of any taxes, interest and/or penalties assessed against Defendants for the specific payments that they received hereunder.  Notwithstanding the foregoing, Defendants acknowledge that this duty to indemnify does not apply to any employer-related taxes paid pursuant to this Settlement Agreement.

## SECTION 4 – RELEASES

**4.1.**    Upon the Effective Date, the Named Plaintiffs and Opt-In Plaintiffs shall release the Released Parties from any and all liability, damages, expenses, or costs arising under the FLSA, the NYLL, and any other applicable federal, state, or local wage and hour law, including without limitation for attorneys' fees and costs arising therefrom, for the entire Class Period (the "Release").

**4.2.**     This Release constitutes a full and final release covering all known, unknown, anticipated and unanticipated injuries, debts, claims or damages within its scope to the Named Plaintiffs and Opt-In Plaintiffs. The Named Plaintiffs and Opt-In Plaintiffs affirm their intention to release not only those claims within the scope of the Release against the Released Parties which the Named Plaintiffs and Opt-In Plaintiffs know about, but also those claims within the scope of the Release about which the Named Plaintiffs and Opt-In Plaintiffs do not know.

**4.3.**     The Named Plaintiffs and Opt-In Plaintiffs acknowledge that, by entering into this Settlement Agreement, they no longer have the right to assert any claim or lawsuit of any kind attempting to recover money or any other relief against any Released Party for alleged acts or injures within the scope of the Release.

**4.4.**     Covenant Not To Sue. A "covenant not to sue" is a legal term which means that the Named Plaintiffs and Opt-In Plaintiffs promise not to file any lawsuits against any Released Party. In addition to waiving and releasing the claims covered by Section 4.1, the Named Plaintiffs and Opt-In Plaintiffs agree never to sue any of the Released Parties in any forum for claims, laws, or theories covered by the Release. The Named Plaintiffs and Opt-In Plaintiffs agree that any such claim, if filed, shall be immediately dismissed with prejudice upon request by the Released Party(ies).

**4.5.**     Liability for Attorneys' Fees. If any Plaintiff, who Defendants can prove actually received a Settlement Notice pursuant to the procedures set forth in this Settlement Agreement, sues or files a claim against any of the Released Parties for any Released Claims, in violation of this Settlement Agreement, such individual shall be liable to the other Released Party(ies) for its/their reasonable attorneys' fees in defending against such suit or claim, to the maximum extent permitted by law.  This provision is limited to fees incurred in litigating defenses related to the Release only, and does not apply if Defendants do not prevail in dismissing the claims they assert are released.

## SECTION 5 – TERMINATION OF THE SETTLEMENT AGREEMENT

**5.1.**     Failure To Approve Or Dismiss. If the Court, for any reason, does not grant Preliminary Approval or Final Approval to this Settlement Agreement in substantially the form as signed by the Parties, or fails to enter a judgment and dismissal with prejudice of the Litigation, or if the Court's grant of final judgment and dismissal is reversed, modified, or declared or rendered void, on appeal or otherwise, then this entire Settlement Agreement shall be rendered null and void.

**5.2.**     Effect Of Termination. If the Settlement Agreement is rendered null and void, or otherwise terminated according to the terms set forth herein, then: (a) neither this Settlement Agreement, nor any of the related negotiations or proceedings, shall be of any force or effect, and no Party shall be bound by any of its terms; (b) all Parties shall stand in the same position, without prejudice, as if the Settlement Agreement had not been entered or filed with the Court; (c) nothing in this Settlement Agreement, or any of the related negotiations or proceedings, shall be admissible for any purpose, including without limitation in connection with Defendants' rights under 29 U.S.C. § 216(b) and/or Fed. R. Civ. P. 23, to contest conditional or class certification in the Litigation or any other legal action asserting substantially the same claims as those asserted in the Litigation; and (d) Defendants shall have no obligation to make any

payment to Class Counsel or the Plaintiffs.

**5.3.**    <u>The Settlement Is Non-Admissible.</u> Neither this Settlement Agreement, nor any ancillary documents, actions, statements or filings in furtherance of settlement shall be admissible or offered into evidence in the Litigation or any other action for any purpose whatsoever, except to seek enforcement of the terms of the Settlement Agreement.

## SECTION 6 – WARRANTIES

**6.1.**    The signatories to this Settlement Agreement represent and warrant that, in light of the retainer agreements signed by the signatories which obligate them to class representative duties, they have the full power, capacity, and authority to enter into this Settlement Agreement and bind the Parties to its terms. Class Counsel and the Named Plaintiffs specifically represent and warrant that the Named Plaintiffs have the capacity to bind the Opt-In Plaintiffs to the terms of this Settlement Agreement.

**6.2.**    If the facts upon which the Settlement Agreement is founded upon are different from the facts believed to be true, this Settlement Agreement shall remain binding and effective and the Parties expressly accept and assume the risk of such possible differences and agree that this Settlement Agreement shall remain binding and effective, notwithstanding any such potential differences.

**6.3.**    The Named Plaintiffs and Opt-In Plaintiffs further expressly warrant that no rights, causes of actions, or claims that they have released on an individual basis in this Settlement Agreement have been assigned, transferred or otherwise disposed of to any person or entity, nor have the Named Plaintiffs made any attempt to assign, transfer or otherwise dispose of any of the rights, causes of action or claims asserted in the Litigation.

## SECTION 7 – DENIAL OF LIABILITY

**7.1.**    This Settlement Agreement is a compromise of disputed claims. Defendants deny any and all allegations of wrongdoing or illegal conduct alleged by Plaintiffs in the Litigation. The exchange of consideration contemplated by this Settlement Agreement, and any other acts, omissions, or statements by the Parties, are not to be construed as any admission of liability of any Party for any claims or defenses, with liability being expressly denied. Neither this Settlement Agreement nor anything contained in the Settlement Agreement, the settlement proposals exchanged by the Parties, or any motions or Orders filed or entered pursuant to the Settlement Agreement, shall be interpreted or construed as an admission or concession of liability, culpability, or wrongdoing by Defendants or Plaintiffs.

## SECTION 8 – GENERAL PROVISIONS

**8.1.**    <u>Entire Agreement.</u> This Settlement Agreement constitutes the entire agreement of the Parties hereto with respect to all of the matters addressed herein, and supersedes all prior or contemporaneous discussions, communications, or agreements, expressed or implied, written or oral, by or between the Parties.

**8.2.** <u>Governing Law.</u> This Settlement Agreement shall be interpreted and governed according to the law of the State of New York, except to the extent superseded by federal law.

**8.3.** <u>Retention of Jurisdiction.</u> The Court shall retain jurisdiction over: (a) the interpretation and implementation of this Settlement Agreement; (b) any and all matters arising out of, or related to, the interpretation or implementation of this Settlement Agreement and/or the settlement contemplated thereby; and (c) any disputes arising out of this Settlement Agreement, including actions or motions to enforce this Settlement Agreement.

**8.4.** <u>Binding On Successors.</u> The provisions of the Settlement Agreement and releases shall be binding upon and shall inure to the benefit of the successors, assigns, and administrators of the respective Parties.

**8.5.** <u>Appeal.</u> In the event of a timely appeal from the Court's judgment and dismissal of the Litigation pursuant to a Final Approval order, the judgment shall be stayed and the actions required by this Settlement Agreement shall not take place until all appeal rights have been exhausted by operation of law.

**8.6.** <u>No Amendment Without A Writing.</u> The Parties hereto agree that no amendment or modification of this Settlement Agreement shall be binding unless made in writing, signed by the Parties, and approved by the Court. Any waiver of the breach of any provision of this Settlement Agreement shall not operate or be construed as a waiver of any subsequent breach.

**8.7.** <u>Defendants' Motion To Enjoin Future Litigation.</u> Plaintiffs and Class Counsel agree not to oppose any motion filed by Defendants under 28 U.S.C. § 1651(a) to enjoin any Plaintiffs from initiating any action in any court based on the same allegations in the Litigation and relating to events occurring up to and through the Final Approval date.

**8.8.** <u>Notice.</u> Unless otherwise specifically provided, all notices, demands, or other communications in connection with this Settlement Agreement shall be sent via United States mail, with a copy by e-mail addressed as follows:

> <u>To the Plaintiffs:</u>
>
>> Christopher Quincy Davis, Esq.
>> Rachel Meredith Haskell, Esq.
>> The Law Office of Christopher Q. Davis, PLLC
>> 225 Broadway, Suite 1803
>> New York, NY 11217
>> cdavis@workingsolutionsnyc.com
>> rhaskell@workingsolutionsnyc.com
>
> <u>To Defendants:</u>
>
>> Robert Whitman, Esq.
>> Joshua Seidman, Esq.
>> Seyfarth Shaw LLP
>> 620 Eighth Avenue, Suite 3200

New York, NY 10018
rwhitman@seyfarth.com
jseidman@seyfarth.com

and

Office of the General Counsel
Altice USA, Inc.
One Court Square, 45th Floor
Long Island City, New York 11120

**8.9.**   <u>Construction And Interpretation.</u> The Parties agree that the terms and conditions of this Settlement Agreement are the result of lengthy, intensive arms-length negotiations between the Parties and that this Settlement Agreement shall not be construed in favor of or against any of the Parties by reason of their participation in the drafting of this Settlement Agreement. Section titles and headings are inserted as a matter of convenience and for reference and in no way define, limit, extend, or describe the scope of this Settlement Agreement or any of its provisions. Each term of this Settlement Agreement is contractual and not merely a recital.

**8.10.**   <u>Counterparts.</u> This Settlement Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Settlement Agreement, which shall be binding upon and effective as to all Parties. A facsimile, digital image, or copy of this Settlement Agreement shall have the full force and effect of, and be admissible as, an original.

**8.11.**   <u>No Active Public Disclosure.</u> As a material inducement for Defendants to enter into this Settlement Agreement, Class Counsel, on behalf of itself and all of its lawyers, staff, and any other lawyer or law firm with which it is affiliated, hereby represents that it: (i) shall not publicize, either electronically (e.g., through a firm-sponsored Website or on Facebook, Twitter or the like) or by any other means, this Settlement Agreement, the terms of the Settlement Agreement, and/or the Litigation; (ii) has not contacted any representative of the media (e.g., press, TV, radio, Internet), and shall not make any press release, public statement, or statement to any third party, concerning this Settlement Agreement, the terms hereof and/or the Litigation and shall not do so in the future; and (iii) in the event that, at any time in the one year following execution of this Settlement Agreement, it is retained by another employee or former employee of Defendants seeking legal representation in connection with a potential class action or collective action claim or claims similar to those that were asserted in the Litigation, it shall, subject to such individual's approval, notify counsel for Defendants so as to provide Defendants the opportunity to discuss the possible resolution of the matter prior to the filing of any claim or lawsuit.

**8.12.**   IN WITNESS THEREOF, the Parties hereto and their Counsel have executed the Settlement Agreement as of the date specified below.

*[Signature Pages to Follow]*

**ACCEPTED AND AGREED:**

**FOR ALL PLAINTIFFS:**

**Thomas Lobbe:** _____
**Dated:** _____**2018**

**Edwin Vega:** _____
**Dated:** _____**2018**

**Anthony Colon:** _____
**Dated:** _____**2018**

**Ruben DeJesus:** _____
**Dated:** _____**2018**

**William Gilbert Garvin:** _____
**Dated:** _____**2018**

**Dion Pemberton:** _____
**Dated:** _____**2018**

**FOR DEFENDANTS AND ALL RELEASEES:**

**By:** _____

**Title:** _Chairman & CEO_____

**Print Name:** _Dexter Goei_____

**Dated:** ____August 29,_____**2018**

**ACCEPTED AND AGREED:**

**FOR ALL PLAINTIFFS:**

**Thomas Lobbe:** _____
Dated: _____2018

**Edwin Vega:** _____
Dated: _____2018

**Anthony Colon:** _____
Dated: _____2018

**Ruben DeJesus:** _____
Dated: _____2018

**William Gilbert Garvin:** _William Garvin_
Dated: _8/29/18_____2018

**Dion Pemberton:** _____
Dated: _____2018

**FOR DEFENDANTS AND ALL RELEASEES:**

By: _____
Title: _____
Print Name: _____
Dated: _____2018

ACCEPTED AND AGREED:

**FOR ALL PLAINTIFFS:**

Thomas Lobbe: _____

Dated: _____ 2018

Edwin Vega: _____

Dated: _____ 2018

Anthony Colon: _Antony Colon_____

Dated: _8 − 30_____ 2018

Ruben DeJesus: _____

Dated: _____ 2018

William Gilbert Garvin: _____

Dated: _____ 2018

Dion Pemberton: _____

Dated: _____ 2018


**FOR DEFENDANTS AND ALL RELEASEES:**

By: _____

Title: _____

Print Name: _____

Dated: _____ 2018

## ACCEPTED AND AGREED:

**FOR ALL PLAINTIFFS:**

**Thomas Lobbe:** _____
**Dated:** _____ **2018**

**Edwin Vega:** _____
**Dated:** _____ **2018**

**Anthony Colon:** _____
**Dated:** _____ **2018**

**Ruben DeJesus:** _____
**Dated:** 8 / 30 _____ **2018**

**William Gilbert Garvin:** _____
**Dated:** _____ **2018**

**Dion Pemberton:** _____
**Dated:** _____ **2018**

## FOR DEFENDANTS AND ALL RELEASEES:

**By:** _____
**Title:** _____
**Print Name:** _____
**Dated:** _____ **2018**

**ACCEPTED AND AGREED:**

**FOR ALL PLAINTIFFS:**

**Thomas Lobbe:** _____
**Dated:** _____ 2018

**Edwin Vega:** _____
**Dated:** _____ 2018

**Anthony Colon:** _____
**Dated:** _____ 2018

**Ruben DeJesus:** _____
**Dated:** _____ 2018

**William Gilbert Garvin:** _____
**Dated:** _____ 2018

**Dion Pemberton:** _Dion Pemberton_
**Dated:** _58/29_ 2018

**FOR DEFENDANTS AND ALL RELEASEES:**

**By:** _____
**Title:** _____
**Print Name:** _____
**Dated:** _____ 2018

ACCEPTED AND AGREED:

**FOR ALL PLAINTIFFS:**

Thomas Lobbe: _____
Dated: _____ 2018

Edwin Vega: _E Vega_ _____
Dated: _Aug. 29_ 2018

Anthony Colon: _____
Dated: _____ 2018

Ruben DeJesus: _____
Dated: _____ 2018

William Gilbert Garvin: _____
Dated: _____ 2018

Dion Pemberton: _____
Dated: _____ 2018

**FOR DEFENDANTS AND ALL RELEASEES:**

By: _____
Title: _____
Print Name: _____
Dated: _____ 2018

**Exhibit 1 to Settlement Agreement _ Settlement Notice**

## NOTICE OF COLLECTIVE ACTION SETTLEMENT

**TO:**  \_\_[INSERT NAME OF COLLECTIVE MEMBER]\_\_\_

*A federal court authorized this notice.  This is not a solicitation from a lawyer.*

This notice is to inform you of a collective action settlement in the case captioned *Thomas Lobbe, et al. v. Cablevision Systems New York City Corp.*, Case No. 16 Civ. 02207 (U.S. District Court for the Southern District of New York) (the "Litigation" or the "Lawsuit").  The settlement was entered into by and between Plaintiffs Thomas Lobbe, Edwin Vega, Anthony Colon, Ruben DeJesus, William Gilbert Garvin, and Dion Pemberton (collectively, "Named Plaintiffs") on behalf of the Collective Class (defined below) and Defendants Cablevision Systems New York City Corporation, Cablevision Systems Corporation, CSC Holdings, LLC, Altice USA, Inc., and Altice Technical Services US Corp. ("Defendants" or "Cablevision").

**PLEASE READ THIS NOTICE CAREFULLY.**  It contains important information about the settlement of the Lawsuit.

- The settlement will create a fund to pay the eighty-three (83) current and former Field Service Technicians ("FSTs") who worked out of depots located in Brooklyn and the Bronx during the pertinent limitations period and filed with the Court a Consent to Join Form (the "Collective Members") for allegations concerning unpaid overtime, unpaid hours and/or unlawful wage deductions.  You are one of the Collective Members.

- Before any payments are made to any of the Collective Members, attorneys' fees and costs will come out of the fund, as will payments to the individuals who brought and participated in this lawsuit and general employer-side payroll tax obligations.

- This settlement resolves a lawsuit in the Southern District of New York over whether Cablevision failed to pay the Collective Members, who worked in New York State, for all hours worked and/or overtime compensation; it avoids the costs and risks to you that are associated with continuing the lawsuit; it pays money to Collective Members like you; and it releases Cablevision from liability.

- The two parties to this lawsuit disagree as to which party would have won if the case proceeded to trial.

## CRITICAL DATES

**[DATE]:**          The last date to mail any written objections to the Settlement.

| WHAT THIS NOTICE CONTAINS | |
|---|---|
| BASIC INFORMATION ................................................................................................... | PAGE 2 |

1

| | |
|---|---|
| 1.  Why did I get this notice?<br>2.  Why is there a settlement? | |
| **THE SETTLEMENT BENEFITS—WHAT YOU GET** ......................................................<br><br>3.  What does the settlement provide?<br>4.  How much will my payment be?<br>5.  Tax treatment of settlement | **PAGE 3** |
| **HOW TO GET A PAYMENT AND EFFECTS OF SETTLEMENT**...................................<br><br>6.   How can I get a payment?<br>7. When would I get my payment?<br>8. What is the effect of the settlement? | **PAGE 4** |
| **THE LAWYERS REPRESENTING YOU** ...........................................................<br><br>9. Do I have a lawyer in this case?<br>10. How will the lawyers be paid? | **PAGE 5** |
| **OBJECTING TO THE SETTLEMENT**.................................................................<br><br>11. How do I tell the Court that I don't like the settlement? | **PAGE 5** |
| **IF YOU DO NOTHING**......................................................................................<br><br>12. What happens if I do nothing at all? | **PAGE 6** |
| **HOW CAN I GET MORE INFORMATION?** ...................................................... | **PAGE 6** |

**BASIC INFORMATION**

### 1.   Why did I get this notice?

You are receiving this settlement notice because as a Collective Member you have the right to know about a settlement of the collective action lawsuit, which you have opted in to by filing a Consent to Join Form with the Court, before the Court decides whether to approve the settlement. Because you have already opted-in to the collective action you are bound by the Court's determination whether to approve the settlement as fair and reasonable. This is true even if you file an objection to the settlement as described in Section 11 below.

The notice also explains how you can file an objection you may have to the terms of the settlement, and the process for administering the settlement if it is approved by the Court.

### 2.   Why is there a settlement?

The Court did not decide in favor of the Plaintiffs or Defendants.  Instead, both sides agreed to a settlement before trial.  That way, both sides avoid the cost of a trial, and the people affected will get compensation. The Named Plaintiffs and the attorneys (i.e., "Class Counsel" as described

in Section 9 below) think the settlement is the best outcome for all Collective Members. Both sides agreed to the settlement to resolve the case, and avoid further disputes, inconvenience, and expense. By agreeing to settle the case, Cablevision does not admit any liability, culpability, negligence, or wrongdoing.

---

## THE SETTLEMENT BENEFITS—WHAT YOU GET

---

### 3.   What does the settlement provide?

Cablevision has agreed to pay no more than one-million four-hundred thousand dollars ($1,400,000.00) to the Collective Members. Before the Collective Members are paid, however, the following amounts may be removed from the settlement fund:

- Attorneys' Fees and Costs: The attorneys for the Collective Members will ask the Court to grant them $350,000 from the settlement fund to pay for their fees in this action. The attorneys for the Collective Members will also ask the Court to grant them the actual amount of any costs expended on behalf of the class, which shall not exceed $35,000.00.

- Service Payment Payments:  The Named Plaintiffs and Opt-in Plaintiffs who sat for depositions will seek special payments for their service in bringing this lawsuit on behalf of the Collective Members. The total amount in service payments they seek is $85,000.00, to be distributed as follows: Plaintiff Thomas Lobbe shall receive Twenty Thousand dollars ($20,000.00); Plaintiff Edwin Vega shall receive Twenty Thousand dollars ($20,000.00); Plaintiff William G. Garvin shall receive Ten Thousand dollars ($10,000.00); Plaintiff Anthony Colon shall receive Seven Thousand Five Hundred dollars ($7,500.00); Plaintiff Ruben DeJesus shall receive Six Thousand Five Hundred dollars ($6,500.00); Plaintiff Dion Pemberton shall receive Two Thousand Five Hundred dollars ($2,500.00); Plaintiff Karl Hughes shall receive Six Thousand dollars ($6,000.00); Plaintiff Levar Graneau shall receive Two Thousand Five Hundred dollars ($2,500.00); Plaintiff Michael Roseborough shall receive Two Thousand Five Hundred dollars ($2,500.00); Plaintiff William Graham shall receive Two Thousand Five Hundred dollars ($2,500.00); Plaintiff Neville McFarlane shall receive Two Thousand Five Hundred dollars ($2,500.00); and Plaintiff Miguel Almonte shall receive Two Thousand Five Hundred dollars ($2,500.00).

- Defendants' Share of Payroll Taxes. All standard employer-side tax obligations, including the Employer Federal Insurance Contributions Act (FICA) amount, arising out of payments to the Collective Members.

---

### 4.   How much will my payment be?

Your share of the settlement fund will be: $_____. This represents your total share of the settlement fund, which includes a share for claims under the Fair Labor Standards Act ("FLSA") as well as your claims under the New York Labor Law ("NYLL"). To receive your settlement share you do not need to do anything.

Your share of the settlement fund was calculated based on the number of weeks you worked for Cablevision in New York State between March 22, 2010 and **[DATE]**.

The calculation of the number of weeks you worked is based on Cablevision's human resource and payroll records. In calculating your share of the settlement fund, any partial weeks that you worked were treated as full weeks of work. A week was only included in the calculation if you received pay for actual work you performed during that week. This means that any weeks for which you did not perform work, but were paid due to vacation, sick pay, FMLA, or other similar reasons, would not be included in calculating your portion of the settlement fund.

If you would like to dispute the number of weeks that you worked or the amount of your settlement payment, you should contact the Claims Administrator at __-__-__. If there is a dispute as to how many weeks you worked, Cablevision's records will be presumed to be correct, but the Parties will evaluate any information and evidence you submit to the Claims Administrator and then reach a final decision.

| **5.  Tax treatment of settlement** |
|---|

Fifty percent (50%) of the payment made to you will be (a) deemed taxable, wage income paid under an IRS Form W-2, and (b) subject to ordinary payroll withholdings; and 50% of the payments made to you from the Settlement Fund shall be treated as non-wage income and reported on an IRS Form 1099.

## HOW TO GET A PAYMENT AND EFFECTS OF SETTLEMENT

| **6.  How can I get a payment?** |
|---|

To qualify for payment of your share of the settlement fund, you do not need to do anything. You will receive a check in the mail after the Court approves the settlement.

| **7.  When would I get my payment?** |
|---|

The Court will decide whether to approve the settlement. If the Court approves the settlement, there may still be appeals. It is always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year. All Collective Members will be informed of the progress of the settlement. Please be patient.

| **8.  What is the effect of the settlement?** |
|---|

If the Court approves the settlement all Collective Members will release the Released Parties (the Defendants, plus all of their respective past, present and future parents, subsidiaries, affiliates, predecessors, successors, directors, officers, members, employees, and anyone else acting for any of them) from any and all liability, damages, expenses, or costs arising under the

FLSA, the NYLL, and any other applicable federal, state, or local wage and hour law, including without limitation for attorneys' fees and costs arising therefrom, from March 22, 2010 to **[DATE]**, 2018 (the "Release"). The Release will constitute a full and final release covering all known, unknown, anticipated and unanticipated injuries, debts, claims or damages within its scope and applies not only those claims within the scope of the Release against the Released Parties which you know about, but also those claims within the scope of the Release about which you do not know. You will no longer have the right to assert any claim or lawsuit of any kind attempting to recover money or any other relief against any Released Party for alleged acts or injures within the scope of the Release.

In addition to waiving and releasing the claims covered above you agree never to sue any of the Released Parties in any forum for claims, laws, or theories covered by the Release and agree that any such claim, if filed, shall be immediately dismissed with prejudice upon request by the Released Party(ies). This covenant not to sue is limited only to Released claims (*i.e.* claims arising under the FLSA, the NYLL, and any other applicable federal, state, or local wage and hour law) during the Class Period.

Finally, if you received this notice and nonetheless sue or file a claim against any of the Released Parties for any Released claims in violation of the Settlement Agreement, you will be liable to the Released Party(ies) for its/their reasonable attorneys' fees in defending against such suit or claim, to the maximum extent permitted by law.

## THE LAWYERS REPRESENTING YOU

### 9. Do I have a lawyer in this case?

The Court has decided that the Law Office of Christopher Q. Davis is qualified to represent you and when you filed your Consent to Join Form with the Court you elected to have the Law Office of Christopher Q. Davis represent you. These attorneys are called "Class Counsel."

### 10. How will the lawyers be paid?

Class Counsel will ask the Court to approve payment of up to $350,000, plus the actual costs expended in litigating this matter, not to exceed $35,000, to them from the settlement fund for attorneys' fees and expenses. The fees would pay Class Counsel for investigating the facts, litigating the case, and negotiating the settlement. Cablevision has agreed not to oppose Class Counsel's request for these fees, but the Court may award less than this amount.

## OBJECTING TO THE SETTLEMENT

If you choose, you can tell the Court that you don't agree with the settlement or some part of it. This is called objecting to the settlement. The Court will consider your views; however, even if you file an objection, you will nonetheless be bound by the Court's decision whether to approve the settlement.

| 11.   How do I tell the Court that I don't like the settlement? |
|---|

To object, you must submit a letter that says "I object to the Settlement proposed in the *Lobbe v. Cablevision* litigation as it relates to my rights under the Settlement Agreement," as well as the reasons that you object to the settlement.  If the Court rejects your objection, you will still be bound by the terms of the settlement.  The letter must include your name (and former names, if any), current address, telephone number, and signature.  You may withdraw your objection at any time.

Your letter must be postmarked no later than **[DATE]**.  You should send the letter to:

CABLEVISION SETTLEMENT
RG/2 Claims Administration LLC
PO Box 59479
Philadelphia, PA 19102-9940

If you do not comply with the procedures and deadlines described in this notice for submitting written comments objecting to the settlement, you will <u>not</u> be entitled to contest or appeal any approval of the settlement or any award of attorneys' fees or expenses, or to contest or appeal from any other orders or judgments of the Court entered in connection with the settlement. The Parties may file with the Court written responses to any filed objections.

| IF YOU DO NOTHING |
|---|

| 12.   What happens if I do nothing at all? |
|---|

If you do nothing, after the Court approves the settlement you will get money under the settlement representing your share of any federal and state law claims.

| HOW CAN I GET MORE INFORMATION? |
|---|

This notice does not contain all of the terms of the proposed settlement.  More details are in a Settlement Agreement.  You can get a copy of the Settlement Agreement by contacting Class Counsel.  If you have any other questions or desire additional details, you may also contact Class Counsel.  Class Counsel's contact information is:

The Law Office of Christopher Q. Davis, PLLC
225 Broadway, Suite 1803
New York, NY 10007
646-430-7930
paralegal@workingsolutionsnyc.com

**Exhibit 2 to Settlement Agreement _ [Proposed] Order**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- X

THOMAS LOBBE, EDWIN VEGA, ANTHONY   :
COLON, RUBEN DEJESUS, WILLIAM   :
GILBERT GARVIN, and DION PEMBERTON,   :
individually and on behalf of all others similarly   :
situated,       :     Civil Action No. 1:16-cv-02207-AKH
      :
      Plaintiffs,   :
      :
    -against-   :
      :
CABLEVISION SYSTEMS NEW YORK CITY   :
CORPORATION, CABLEVISION SYSTEMS   :
CORPORATION, CSC HOLDINGS, LLC,   :
ALTICE USA, and ALTICE TECHNICAL   :
SERVICES USA,   :
      :
      Defendants.   :
      :
-------------------------------------------------- X

**[PROPOSED] ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR**
**PRELIMINARY APPROVAL OF THE COLLECTIVE ACTION SETTLEMENT**

      This matter came before the Court on the application of Plaintiffs Thomas Lobbe, Edwin

Vega, Anthony Colon, Ruben DeJesus, William Gilbert Garvin, and Dion Pemberton (collectively,

"Named Plaintiffs") for preliminary approval of the settlement between Plaintiffs and Defendants

Cablevision Systems New York City Corporation, Cablevision Systems Corporation, CSC

Holdings, LLC, Altice USA, Inc., and Altice Technical Services US Corp. ("Defendants" or

"Cablevision", collectively with the Named Plaintiffs, the "Parties") as set forth in the Settlement

Agreement submitted to this Court.  The Court having considered all papers filed and proceedings

had herein and having otherwise been fully informed of the premises and good cause appearing

therefore, it is on this _____ day of _____, 2018,

**IT IS HEREBY ORDERED THAT:**

1

**I.      Background**

1.      For purposes of this Order, the Court adopts and incorporates the definitions as set forth in the Settlement Agreement executed by the Parties and filed with this Court.

2.      The Settlement Agreement settles claims for 83 members of the FLSA Collective (the "Collective" or "Plaintiffs"), who had submitted a Consent to Join Form to participate in this lawsuit prior to the Parties entering into the Settlement Agreement.  The Settlement Agreement also settles the supplementary NYLL law claims for each of the 83 members of the FLSA Collective.

3.      The Plaintiffs allege that Cablevision purportedly violated the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") for reasons set forth in the Second Amended Complaint.

**II.     Preliminary Settlement Approval**

4.      Based upon the Court's review of Plaintiffs' Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of the Collective Action Settlement; the Declaration of Christopher Q. Davis ("Davis Declaration"); and all corresponding exhibits and papers submitted in connection with the Motion, the Court grants preliminary approval of the Settlement Agreement made and entered into on or about August 31, 2018, by and between the Named Plaintiffs, individually and on behalf of the Collective, as defined above, and Defendants.

5.      All 83 Plaintiffs who submitted a Consent to Join Form with this Court are encompassed within the above definition of the Collective and are eligible to participate in this Settlement.

6.      The Parties agreed to settle this case for a Gross Settlement Amount of up to one-million four-hundred thousand dollars ($1,400,000.00).  The "Net Settlement Fund" means the

remainder of the Gross Settlement Amount after deductions for: (1) Court-approved attorneys' fees for Class Counsel of two-hundred thousand dollars ($350,000), representing twenty-five percent (25%) of the Gross Settlement Amount, and actual costs not to exceed thirty-five thousand dollars ($35,000); (2) Court-approved Service Awards not to exceed eighty-five thousand dollars ($85,000) to be divided between Thomas Lobbe, Edwin Vega, William G. Garvin, Anthony Colon, Ruben DeJesus, Dion Pemberton, Karl Hughes, Levar Graneau, Michael Roseborough, William Graham, Neville McFarlane, and Miguel Almonte; and (3) standard employer-side tax obligations, including the Employer Federal Insurance Contributions Act (FICA) amount, as specified in the Settlement Agreement.

7.     The approval of a proposed class action settlement is a matter of discretion for the trial court. *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998).  In exercising this discretion, courts should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988).

8.     The Court concludes that the Settlement Agreement is within the range of possible final settlement approval, such that preliminary approval and subsequent notice to the Collective is appropriate. *See Diaz v. Eastern Locating Serv., Inc.*, No. 10 Civ. 4082, 2010 WL 2945556, at *1 (S.D.N.Y. July 22, 2010); *In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980).

9.     The Court finds that the proposed settlement is the result of extensive, arm's-length negotiations by counsel well-versed in the prosecution and defense of wage-and-hour class action lawsuits.

**VII.     Settlement Notice and Settlement Procedure**

10.     The Court approves the Notice of Proposed Settlement of Collective Action

Lawsuit (the "Settlement Notice") and directs their distribution to all Plaintiffs.

11.     For purposes of settlement only, the Court finds that the proposed Settlement

Notice satisfies the requirements of the FLSA.  Section 216(b) of the FLSA states in relevant

part that:

> (a)n action…may be maintained…in any Federal or State court of competent jurisdiction by any one or more employees for an on behalf of himself or themselves and other employees similarly situated.  No employee shall be a participating plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

12.     The Court hereby adopts the following settlement approval process:

a.   Within ten (10) business days following the Court's entry of the Preliminary Approval Order, Defendants shall provide the Administrator with a class contact list, in electronic form, that includes names, postal addresses, and email addresses of the Plaintiffs as reflected in Defendants' personnel records.

b.   Within ten (10) calendar days following its receipt of the list of the Plaintiffs set forth in 12(a) above, the Administrator will e-mail and mail to Plaintiffs, via First Class United States Mail, postage prepaid, the Court-approved Settlement Notices.

c.   On or before the applicable Settlement Notice Response Deadline, as defined in Section 1.25 of the Settlement Agreement, a Plaintiff's Objection, if any, must be completed and postmarked.

d.   The Administrator will stamp the receipt date on the original of each Objection that it receives and shall send copies to Counsel within one (1) business day of receipt. Class Counsel shall file the date-stamped objections, if any, with the Court as part of Plaintiffs' Final Approval Motion.  Counsel shall file with the Court written responses, if any, to any filed objections as part of Plaintiffs' Motion for Final Approval.

e.   No later than fifteen (15) calendar days after the Settlement Notice Response Deadline, or pursuant to a schedule set by the Court, Plaintiffs will submit a Motion for Judgment and Final Approval of the Settlement, together with a motion seeking the payment of attorneys' fees, costs, and the Service Payments.

    f.    If the Court grants Plaintiffs' Motion for Final Approval of the Settlement, the Court will issue a Final Order and Judgment for Dismissal.

    g.    Each Plaintiff will have ninety (90) calendar days from the date on which the Settlement Distribution Checks are mailed to negotiate his or her settlement check(s).

    h.    The "Effective Date" shall be the later of: (i) if an appeal has been filed from the order of the Court granting Final Approval, the date on which the appeal and any subsequent proceedings are fully and finally disposed of; or (ii) if no appeal is filed, thirty-five (35) calendar days following the date of Final Approval.

    i.    No more than ten (10) business days after the Effective Date, Defendants shall transfer the Gross Settlement Amount to the Qualified Settlement Fund.

    j.    No more than twenty-one (21) calendar days after the Effective Date, the Administrator shall mail Settlement Distribution Checks to the Plaintiffs, mail the attorneys' fees and costs to Class Counsel, and mail service awards approved by the Court.

13.    The Court preliminarily approves the settlement and finds that it was reached as a result of vigorously contested litigation to resolve bona fide disputes. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1353 n.8

**SO ORDERED**:

_____
Hon. Judge Alvin K. Hellerstein

Date:_____, 2018