

Seyfarth Shaw LLP

620 Eighth Avenue
New York, New York 10018
T (212) 218-5500
F (212) 218-5526

rwhitman@seyfarth.com
T (212) 218-5629

www.seyfarth.com

June 1, 2020

**VIA ECF**

The Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
New York, NY 10007

> Re:   *Lobbe v. Cablevision Systems New York City Corporation,*
>          No. 1:16-cv-02207-AKH

Dear Judge Hellerstein:

This firm represents the Defendants in the above-captioned matter. We write to respectfully request that the Court exercise its retained jurisdiction to resolve a dispute that has arisen out of the parties' settlement agreement.

**Background**

This action involved collective claims under the Fair Labor Standards Act by current and former Field Service Technicians for Cablevision who worked in Brooklyn or the Bronx. The parties resolved those claims in their entirety in a settlement agreement (the "Agreement"), which Your Honor approved on January 11, 2019. (ECF 184)  Section 8.3 of the Agreement provides:

> Retention of Jurisdiction. The Court shall retain jurisdiction over: (a) the interpretation and implementation of this Settlement Agreement; (b) any and all matters arising out of, or related to, the interpretation or implementation of this Settlement Agreement and/or the settlement contemplated thereby; and (c) any disputes arising out of this Settlement Agreement, including actions or motions to enforce this Settlement Agreement.

(ECF 183-1)

Marlon Anthony Gayle was an opt-in plaintiff and member of the settlement class in this matter. (*See* ECF 183-1 at § 1.A.1.13) Pursuant to the Agreement, Mr. Gayle was entitled to a payment in the gross amount of $2,891.63.

However, as a result of an error in the administration of the settlement payment, Mr. Gayle inadvertently received $18,929.49, reflecting an overpayment of $16,037.86 (the "Overpayment"). Our investigation revealed that the data used to calculate Mr. Gayle's settlement amount was improperly combined with the data of another Cablevision employee



with the same first name, same middle initial, and same last name as Mr. Gayle. That other employee did not opt into this class and thus is not a participant in this settlement, although he did work as a Field Service Technician in the same locations during the time period covered by this settlement. For the purposes of calculating settlement shares among the Plaintiffs, Cablevision provided counsel for the Plaintiffs with an Excel file, which contained data for both individuals named "Marlon Gayle." Instead of using Mr. Gayle's proper data, counsel for Plaintiffs combined the data for the two individuals, resulting in a greater hourly rate of pay for Mr. Gayle and the inflation of his credited time in the class period by four years.

In addition, we learned that Mr. Gayle received two checks in connection with the settlement, one of which reflected the address of the other Marlon Gayle, but he nonetheless cashed both. The checks were tendered to Mr. Gayle at counsel for Plaintiffs' office, where Mr. Gayle signed a receipt stating "checks picked up," although one of the checks did not reflect his address.

After the discovery of the Overpayment, counsel for Plaintiffs asked Mr. Gayle to refund the full amount, but he did not comply. Thereafter, Cablevision management spoke with Mr. Gayle several times to request his repayment (Mr. Gayle remains an employee), but he still has refused to make the repayment. In or about August 2019, Mr. Gayle advised management that he had already spent the settlement funds, apparently on a vacation, and was not able to repay it. While Mr. Gayle did state his willingness to agree to $500 deductions from his bi-weekly pay, this was likely not permissible under the New York Labor Law, and in any event would have required deductions for 32 pay periods (nearly 15 months), significantly delaying the recoupment of the Overpayment and its redistribution to other members of the settlement class.

In addition to the foregoing, Mr. Gayle received a payment in the gross amount of $6,852.25 in a second Cablevision lawsuit where he is a class member, *Villegas, et al. v. Cablevision Systems New York City Corporation, et al.*, No. 17-cv-05824-VMS (E.D.N.Y.). In anticipation of that expected payment, Cablevision has asked Mr. Gayle to sign it over as a down payment toward a full refund of the Overpayment in this action. He has repeatedly refused these requests, and on May 19, 2020, he received and cashed the check for the *Villegas* payment.

In recent months, Mr. Gayle withdrew his proposal of repaying $500 bi-weekly, stating that he can no longer afford such payments and offering to repay only $200 per bi-weekly paycheck. That proposal would have extended the repayment period to more than three years. However, during a final discussion on May 21, 2020, Mr. Gayle declined to agree even to that lesser repayment amount, advising Cablevision management that they would need to involve the Court to get the Overpayment refunded.

**Mr. Gayle Must Repay the Full Amount of the Overpayment**

Defendants now respectfully request that this Court issue an order, pursuant to section 8.3 of the Agreement, directing Mr. Gayle to promptly repay the Overpayment. Defendants acknowledge that a payment plan may be necessary to ease the burden on Mr. Gayle in repaying the Overpayment, but at this juncture he is not willing to agree even to that.

Mr. Gayle's retention of the Overpayment is counter to New York law. "[W]hen one party mistakenly makes a payment, and another benefits from that payment, a quasi-contractual relationship is created, which gives rise to an obligation to pay." *United States ex rel. Ryan v. Staten Island Univ. Hosp.*, 2011 U.S. Dist. LEXIS 51648, *12-13 (E.D.N.Y May 13, 2011); *see*



*also Cohen v. City Co. of New York*, 283 N.Y. 112, 115 (1940) (the same). The same principles apply under the doctrine of "money had and received," the elements of which are "(1) defendant received money belonging to plaintiff; (2) defendant benefited from the receipt of money; and (3) under principles of equity and good conscience, defendant should not be permitted to keep the money." *Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank, N.A.*, 731 F.2d 112, 125 (2d Cir. 1984).

Mr. Gayle's retention of the Overpayment also meets the requirements of unjust enrichment, in that he was enriched at another party's expense, and "it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011); *see also Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 215 (2007) ("It is well settled that '[t]he essential inquiry in any action for unjust enrichment or restitution is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered.'") (quoting *Paramount Film Distrib. Corp. v. State of New York*, 30 N.Y.2d 415, 421 (1972)).

Mr. Gayle's actions could also be construed as conversion, given his "unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403 (2d Cir. 2006) (internal quotation marks and citations omitted). "Two key elements of conversion are (1) [the moving party's] possessory right or interest in the property and (2) [another party's] dominion over the property or interference with it, in derogation of [the moving party's] rights.'" *Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 50 (2006) (citations omitted).

Here, Mr. Gayle's retention of the Overpayment has deprived all other members of the settlement class in the instant action of their full respective payments. If any repayment is made, the amount will be redistributed to those other individuals according to their *pro rata* apportionment. Neither Defendants nor Plaintiffs' counsel have any interest in retaining the Overpayment, but only in ensuring that it is fairly distributed to the other settlement class members without undue enrichment for Mr. Gayle.



The Honorable Alvin K. Hellerstein
June 1, 2020
Page 4

**Conclusion**

We regret burdening Your Honor with this dispute in an action that has been dismissed and closed for more than a year. Unfortunately, Mr. Gayle's intransigence has left us with no other recourse. Plaintiffs' counsel and Cablevision have worked tirelessly with Mr. Gayle in an attempt to reach an amicable resolution, all to no avail. To date, he has not repaid any amount of the Overpayment, even while acknowledging that he had no legal or other basis to receive that amount.

Accordingly, Defendants respectfully request that this Court order Mr. Gayle to repay the Overpayment, in the amount of $16,037.86, upon such terms as the Court deems reasonable and just.

We thank the Court for its consideration of this request.

Respectfully submitted,

SEYFARTH SHAW LLP

*/s/ Robert S. Whitman*

Robert S. Whitman


cc:    Counsel of record (by ECF)
       Marlon Anthony Gayle (by FedEx)